BERNARD STROH AND ELON W. HUDSON v. GUY F. HINCHMAN.

*Peremptory Challenges when Defenses are Distinct—Comp. L., § 6027 —Implied Authority to Sign one's Name.*

Each defendant who pleads separately by different counsel is separately entitled to the two peremptory challenges allowed by statute. Comp. L., § 6027.

All evidence should have some legitimate tendency to establish or disprove the fact in controversy; otherwise it should be rejected.

Neglect to prosecute for the unauthorized use of one's name on negotiable paper does not estop one from denying his liability on similar paper made thereafter, nor make the offender a general agent to make and negotiate such paper.

The recognition of paper on which one's name has been used without authority, may be shown as tending to show an implied authority to make such paper afterwards.

Joint relations as partners or otherwise will not give one any implied authority to authorize the use of another's name as maker or endorser where their apparent interests or legal obligations might be different.

Whether actions upon various promissory notes to which the defendants' names are attached in different relations to each other and to the other parties, can be consolidated—Q.

Error to Superior Court of Detroit.   Submitted October 10.   Decided October 30.

ASSUMPSIT.   The facts are in the opinion.

*Henry M. Duffield* and *Theodore Romeyn* for plaintiffs in error. It is good cause of challenge that a juror's opinion is decided, *Osiander's Case*, 3 Leigh, 780, is based on the testimony of witnesses, *Smith v. Eames*, 4 Ill., 76, and needs evidence to change it, *Cancemi v. People*, 16 N. Y., 501; *Armistead v. Commonwealth*, 11 Leigh, 657.

*Meddaugh & Driggs* and *Ashley Pond* for defendant in error.

COOLEY, C. J.  Hinchman sued Stroh and Hudson on thirty-eight negotiable promissory notes, thirty-two of which purported to have been made by defendants and endorsed by Richard D. Winsor, three to have been made by Richard D. Winsor and A. B. Hinman and endorsed by defendants, one to have been made by defendants and endorsed by Winsor and Hinman, one to have been made by Hudson and endorsed by Stroh and Winsor, and one to have been made by defendants and endorsed by Winsor and Hubbard Smith. The defendants pleaded separately by different attorneys, and denied on oath the execution of the papers by them respectively.

On the impaneling of the jury a question of much importance arose concerning the right to peremptory challenges. The statute (Comp. L., § 6027) provides that "In all civil cases each party may challenge peremptorily two jurors." In this case one of the defendants challenged peremptorily two jurors; the other defendant then challenged one, but the court overruled the challenge on the ground that the two defendants constituted but one party in the sense of the statute, and their right of peremptory challenge was now exhausted. This ruling has for its support the case of *Bibb v. Reid*, 3 Ala., 88, which appears to be exactly in point. In *Stone v. Segur*, 11 Allen, 568, it was also decided that all the persons joined as plaintiffs or defendants in a civil action constitute but one party within the meaning of a similar statute. That was an action of tort, and all the defendants claiming the right had pleaded jointly by the same counsel. The court in assigning reasons for their construction of the statute say: "The bias or prejudice

against which it was intended to protect parties was not so much that which might arise in the mind of a juror from personal dislike or hatred of individuals who might happen to be plaintiffs or defendants in an action, but rather that which might relate to or grow out of the subject matter in controversy in a suit. This object would be fully attained by giving to the plaintiffs and defendants in an action, without reference to the number of persons joined on one side or the other, each the right to challenge two persons peremptorily. By the exercise of this right each party to the suit would be enabled to guard against any undue partiality arising out of the subject matter in issue to the extent of the two challenges allowed by the statute." The same question arose in *Sodousky v. McGee*, 4 J. J. Marsh., 267, and was decided the same way. The court say of the defendants, "Whether they pleaded jointly or severally they all constituted but one party, and therefore the whole of them had a right to only three peremptory challenges. In criminal cases, if several persons be tried on a joint indictment by the same jury, each has a separate and independent right to his challenges, whether peremptory or for cause; because, although the trial is joint in form, it is in substance and effect several. The verdict must be several. Each must be punished according to his own guilt, and not according to that of another; and the punishment is individual and several, not joint. There can be no contribution, no substitution. Hence to avoid the inconveniences which would result from separate challenges in the same trial, it is the practice of courts of criminal jurisdiction to order separate trials, unless the parties jointly indicted will waive their right to peremptory challenges. But none of these reasons apply to a joint trial in a suit for trespass, or in any trial in which the parties are responsible civiliter, and all who shall be found guilty are contributory."

Now a rule is to be judged by the reasons that may be assigned for it; and judging this supposed statutory rule by that standard, the conclusion of the court in *Stone v. Segur*, where confined to the facts of that case, seems entirely sound and reasonable. There the defendants had

united on one issue, presented by the same counsel, and had contented themselves with a joint defense. They were consequently by their own voluntary action but one party before the court, and had but one mouthpiece. Any challenge made on behalf of one must necessarily be on behalf of the other also, and when the statutory number had been made the right of each was exhausted, even though all had been made at the suggestion of one of the defendants only. It was immaterial who had suggested them when they were thus made in the name and on behalf of all. And if the court was right in supposing that the bias or prejudice that might grow out of the subject in controversy was what the legislature had in view in giving peremptory challenges, then the defendants in the case must be supposed to have had the full benefit of the statutory privilege, since any bias or prejudice that could affect one must in the same degree affect the other also.

In a case like the present it is different. Stroh and Hudson are here sued on several different classes of paper; on some of which their positions in respect to each other and to third parties were the same, while on others they were different. In most cases their positions appear to be those of principals, with others as sureties, but in some they are sureties for others, and in one Stroh is surety for Hudson. The two have not only pleaded separately by different counsel, but it is legally supposable that each may have a distinct and separate defense, and that the jury may return a verdict for one and against the other on some of the notes counted on. It could not, therefore, be assumed by the court that the controversy in respect to all the notes would be the same as between the plaintiff and each of the defendants,—that the issue made by the evidence would be the same, and subject to the same and no other prejudice. On the contrary, to employ the language of the court in Sodousky v. McGee, the trial, though joint in form, must in substance and effect be several, the verdict in some contingencies must be several, the judgment against each must be according to the extent of his liability, and not according to that of another, the liability on some of the paper being.

several, although the statute permits a joint action. If, therefore, reasons were correctly assigned in *Sodousky v. McGee* why the defendants in some cases should be considered one party only, and not in others, this case is one in which they are entitled to be considered as two.

But the facts which this record discloses enable us to test this statute in a way to show how utterly the reasons assigned for considering all the defendants as one party only must fail in some cases. As Winsor's name was on every one of the thirty-eight notes, the plaintiff had the same right to join him as a defendant that he had to join these defendants in one suit. Now the record discloses that the theory of the plaintiff was, that Stroh and Hudson never in person signed or endorsed any of the paper, but that their names were put to all the notes, either as makers or endorsers, by Richard D. Winsor, who wrote them in imitation of genuine signatures, but under circumstances which made him their agent for the purpose. This theory he sought to support by the evidence of Winsor, and in the Superior Court was successful in so doing. Now had Winsor been united as a defendant, it is not only manifest that his interest would have been antagonistic to that of the other defendants, but it was such that any bias or prejudice against the other defendants, growing out of their connection with the paper, and their repudiation of it, must naturally lead the parties indulging it to sympathize not only with the plaintiffs, but with Winsor also. Suppose then that the three had been sued together and had pleaded separately by different counsel, how could any joint right of peremptory challenge have been exercised? The court, of course, when the jury is being empaneled, cannot know what the evidence is to disclose, or how prejudices are likely to affect the issue; it could only know that three defendants severally were contesting their liability on the paper in suit. It cannot be, we think, that all the defendants would be compelled to agree upon a challenge before it would be allowed; if one challenges where the others are not disposed to do so, he is deprived of his statutory right if his challenge is not recognized. But suppose each of

the three defendants demand the right to a challenge, and each fix upon different persons to set aside, what authority has the court to apportion the right, or upon what principle could it be done if it had the authority? The man Hudson desired to retain might be the one Stroh desired to set aside, and the wishes of Winsor would be almost certain to run counter to those of both the others. If the privilege of challenging one were assigned say to Hudson, and of another to Stroh, it would be preposterous to say that Winsor had been allowed the privilege at all. But the result would be still more extraordinary if Hudson and Stroh happened to be satisfied with the jurors summoned, for then two peremptory challenges might be made by Winsor, and these would be likely to be as favorable to the plaintiff as to him, and the general result would be that a statutory privilege designed for the defendants would be exercised against the wishes—perhaps against the protest—of the two defendants with whom the real controversy is made, and to the advantage of the plaintiff, and so as to give to him the benefit of the very sympathies or prejudices the privilege was intended as a protection against. But it might happen that when two had thus been set aside on the challenge of Winsor, persons would be summoned in their place objectionable to the other defendants, but whom they could not challenge peremptorily, because already their privilege has been exhausted by the act of another against their will. This would be an extraordinary result, and one which we cannot think the statute ever contemplated.

To us it seems manifest that insuperable difficulties must arise in the application of this statute if it is so construed that only two peremptory challenges are allowed to all the defendants where they plead severally. If they are compelled to agree upon any challenge, the very impossibility of doing so may defeat the privilege altogether; and where defendants are joined whose interests are antagonistic, as is sometimes the case, a refusal to unite in a challenge would be very likely not to have in view the common interest of all the defendants. But if the defendants cannot be required to agree upon challenges, then they must be allowed the

privilege severally, and it is gone as soon as the two who are permitted to challenge first, have done so. In that way a portion of the defendants must be deprived of the statutory privilege altogether, and no protest which they could interpose would be effectual, though nominally the privilege would be allowed to and exercised by them.

In our opinion the statute cannot have a reasonable construction, or one which will effectuate its intent, unless the right of separate challenge is allowed to each defendant who pleads separately by different counsel. Any other construction leads not only to injustice, but under some circumstances to absurdities.

The other question of importance presented by the record relates to the admission of evidence to connect the defendants with the disputed paper. Their names, as already stated, having been put to the paper by Winsor, who imitated their signatures in doing so, it became necessary for the plaintiff to show either that Winsor had express or implied authority for what he had done, or that the paper in suit was issued under circumstances which estopped the defendants from disputing it. The latter was not claimed. All the paper was negotiated by Winsor to different parties, who received the same on the supposition that it was signed or endorsed with the genuine signatures of defendants, and not for any other reason. The defendants, therefore, had any one of the notes been sued by itself, and had the evidence in respect to it been confined to the paper itself and the circumstances attending its negotiation, would, so far as we can now see, have had a complete defense. But it was claimed by the plaintiff that many similar notes, signed or endorsed in the same way, had previously been put afloat by Winsor, some of which were brought to the notice of defendants without being repudiated by them; and he was allowed to show this as the basis for an inference that what had been done by Winsor was authorized, and in support of the evidence of Winsor that what he was doing was known to the defendants from the beginning.

The authorities bearing directly upon this point are not

very satisfactory or conclusive. In *Barber v. Gingell*, 3 Esp., 60, Lord Kenyon received similar evidence, and appears to have regarded it as conclusive of the liability of the party whose name was forged; which it clearly was not, even if admissible. In *Cash v. Taylor*, Lloyd & W. Merc. Cas., 178, cited in 1 Pars. Notes and Bills, 101, such evidence was treated as irrelevant unless it was shown that the paper was taken with knowledge of and in reliance upon the facts. In *Weed v. Carpenter*, 4 Wend., 219, similar evidence was received, and so it was in *Greenfield Bank v. Crafts*, 4 Allen, 447, and *Forsyth v. Day*, 46 Me., 176, but in each of these cases there was some evidence of the ratification of the execution of the very paper in suit; and in support of that evidence the fact of similar paper having previously been recognized might well be regarded as important. We cannot perceive that *Winton v. Hart*, 39 Conn., 16, to which our attention is directed, is important; the question in that case was one of estoppel. In *St. John v. Redmond*, 9 Port., 428, evidence like that received in the court below was held to be inadmissible unless the plaintiff could show that with knowledge of the previous facts he had taken the paper supposing it to be authorized.

But it is not important to enter upon a critical examination of these cases, or to make any attempt to harmonize what obviously are irreconcilable. As a new trial must be had, it will be sufficient to indicate the general principles which should govern the reception of evidence. All evidence should have some legitimate tendency to establish or disprove the fact in controversy, and whatever has no such tendency should be rejected. In our opinion the mere fact that paper of the sort here sued upon had previously been put afloat in the community by Winsor and subsequently taken up by him, could have no legitimate bearing upon the issue in this suit. Because the names of Hudson and Stroh had been successfully forged to other paper, no matter how extensively, is no reason for holding them liable upon the paper here sued, if in fact that was forged also. Neither would the fact that the forgery came to their knowledge and that they refrained from instituting a prosecution for it, affect

the case.   One does not, by failing to prosecute another
who has made unauthorized use of his name, thereby make
him his general agent for the manufacture and negotiation
of similar paper in the future, or estop himself from dis-
puting any paper made without authority subsequently.   So
much, it seems to us, is clear.

But in this case the plaintiff undertook to show that
these defendants knew at the time this paper was being
issued that Winsor was putting it afloat, and interposed no
objection.   Winsor so testifies; and if his testimony is be-
lieved, a case of implied authority from them to him, to
issue this paper in their names, is perhaps made out.   His
evidence presents the issue between the parties very sharply;
and if the fact is, as some of the witnesses testify, that
other notes, executed like these by Winsor in the name of
Stroh and Hudson, had previously been negotiated, and that
they had been brought to the knowledge of these defendants,
who admitted or recognized their liability upon them, that
fact would have some tendency to corroborate Winsor, and
to establish his agency to execute the notes in suit.   We
think, therefore, that while it was not admissible to prove,
as an independent fact, the previous existence, and negotia-
tion of other paper like this in suit, yet if it can be further
shown that any such paper was brought to the knowledge
of the defendants who did not repudiate it, but treated it
as valid paper, the fact will have a tendency, not merely
to show that that particular paper was authorized or sanc-
tioned, but to strengthen and support any evidence which
may be given of authority from Stroh and Hudson to Win-
sor to make use of their names in executing such paper
thereafter.   It would not be conclusive, but it would have a
legitimate tendency to support the more direct evidence of
Winsor's agency.

In the admission of evidence in this case the court evi-
dently intended to keep within the limits of what seems to
us the correct rule, and perhaps did not depart from it.
The defendants' theory of the case was, that they could be
liable upon none of this paper unless in some manner they
had adopted the particular paper, or unless it had been

taken with knowledge of its execution by Winsor and in reliance upon the recognition as valid of similar paper issued previously. This view we think is erroneous. The question presented by the record was one of agency, and when evidence was given which, if believed, would justify an inference that Winsor had implied authority to issue the paper in suit, that inference would be strengthened if it could be further shown that similar paper had previously been issued and negotiated by Winsor which the defendants knew of and did not repudiate but affirmed. The evidence, therefore, of the previous transactions would in our opinion have a legitimate bearing upon the issue.

In one particular the charge of the court was incautious and erroneous. He instructed the jury that if Hudson and Stroh, *one or both of them,* assented to the making of these notes, and to their negotiation by Winsor, that would be sufficient. This instruction was based upon an assumption that the notes, if lawfully issued, were obligations of these defendants made in respect to matters where the interests of each were alike; and there was evidence that the issue of such paper was begun by Winsor in transactions where the defendants and Winsor were jointly interested with a third party and were continued in other transactions in which only the defendants and Winsor were jointly concerned. But we look in vain in the record for any authority which either of these defendants had from the other to consent that his individual name might be put by Winsor as maker or endorser upon any paper whatsoever; and if any such authority could be implied as arising from their joint relation in any business transaction, as partners or otherwise, it is clear that none could be implied for one defendant to authorize a third party to so make them parties to commercial paper as that their apparent interests and legal obligations would be different. Now, as already stated, on one of these notes Hudson appears as maker, with Stroh as endorser, or surety; and it would be manifestly incorrect to say that Stroh, under any implied authority to make or authorize the making of paper to bind Hudson and himself

jointly, might make or authorize that the ultimate responsibility of which would fall upon Hudson alone.

And this leads us to remark that this suit is something of an anomaly; the defendants, as before stated, if liable on all the paper sued, being liable in different capacities, and having in some cases remedies over and in others not. The right to unite all these obligations in one suit has not been questioned or argued, and therefore it is not considered; and we refer to the peculiarities of the case for the purposes only of an understanding of what has been said when speaking of challenges. If these various obligations, on which the parties are supposed to be liable in different capacities, may thus be united in one suit, there must be a right to return different verdicts if it is found that both the defendants are not liable on all the paper. One defendant may perhaps be discharged, or there may be separate verdicts for different sums, against them.

The judgment must be reversed with costs, and a new trial ordered.

GRAVES and CAMPBELL, JJ., concurred.

MARSTON, J., did not sit in this case.