### YONKUS *v.* McKAY.

1. TRIAL—JURY—PEREMPTORY CHALLENGES.

   A separate peremptory challenge is allowed to each defendant who appears separately by his own counsel, and on the trial of a civil damage action it was not reversible error to permit the attorney for the defendant surety company to exercise a challenge after the defendants had collectively challenged four of the panel peremptorily; the defenses open to a surety company in a civil damage action being of a different character from the defenses which might be set up by the other defendants.

2. EVIDENCE—WITNESSES—IMPEACHMENT.

   It was not erroneous, in the course of the trial, to permit the attorney for the defendant, for the purposes of impeachment, to read into the record part of an affidavit which had been made by one of plaintiff's witnesses prior to the trial, the only portion of the paper which was read relating to the testimony of the witness and tending to impeach him.

3. INTOXICATING LIQUORS — CIVIL DAMAGE ACTION — EVIDENCE — CROSS-EXAMINATION.

   Where plaintiff in a civil damage action offered as a witness her sister, and the defendants' contention was that plaintiff's father was a man of violent disposition, that

he had beaten the plaintiff and hurt her when he was sober, and that the injuries claimed to have been received by plaintiff were caused when her father was not intoxicated, the trial court was not in error in permitting the defendants to cross-examine the witness upon the question whether or not plaintiff had had trouble with her father prior to the alleged injury.

4. SAME—EVIDENCE—IMPEACHMENT—MATERIALITY OF TESTIMONY.

It is improper to permit impeaching evidence upon matters immaterial to the issue.

5. WITNESSES—TRIAL—IMPEACHMENT.

Testimony of a witness tending to show that the father of plaintiff had no money upon the day of the alleged assault, when he was alleged to have purchased intoxicating liquors, was admissible for the purpose of impeaching him in regard to testimony that he gave tending to show that he had money upon that occasion; the testimony was also admissible upon the main issue whether or not the father was in fact intoxicated.

6. INTOXICATING LIQUORS—DIRECTING VERDICT—TRIAL.

In an action against a number of saloon keepers and their surety for injuries to plaintiff's person alleged to have been caused by her father while he was in a state of intoxication, testimony of plaintiff and the members of the family that the assault occurred, that the father was intoxicated, and that he was in the habit of so becoming, was not conclusive upon the court; the burden of proof was upon plaintiff to establish her case by a preponderance of the evidence and the credibility of the witnesses was for the jury; although uncontradicted, the facts, not being conceded by defendant, raised questions which the court properly submitted by appropriate instructions.

Error to Kent; Brown, J. Submitted April 19, 1915. (Docket No. 22.) Decided June 7, 1915.

Case by Anna Yonkus, by next friend, against Archibald B. McKay and others for injuries to plaintiff's person caused by and during the intoxication of her father. Judgment for defendants. Plaintiff brings error. Affirmed.

*Rodgers & Rodgers,* for appellant.

*McKenna & Herman* and *A. F. Bunting,* for appellees.

BROOKE, C. J.   This is an action under the so-called civil-damage act by means of which the plaintiff, a girl 13 years of age, seeks to recover damages from the two individual defendants who are saloon keepers, and the corporate surety upon their bonds.   It is her claim that on the evening of November 17, 1913, she suffered serious physical injuries at the hands of her father who assaulted her while he was in a drunken condition.   It is further claimed by her that the condition of drunkenness in which her father was at the time of the alleged assault was contributed to by both of the individual defendants to the action.   The individual defendants appeared and filed a plea of the general issue by John J. McKenna as their attorney. The defendant surety company filed its plea of the general issue through its attorney, A. F. Bunting. The case was tried at considerable length, the questions in issue being submitted to a jury and resulted in a verdict in favor of the defendants.

Plaintiff reviews her case in this court under some 26 assignments of error.   These are discussed by her counsel under the following headings:

(1) Error in ruling on peremptory challenge of juror.

(2) Error in ruling on the admissibility of evidence.

(3) Error in instructing the jury.

1. It should be noted that the individual defendants appeared by one attorney and filed a separate plea and that the defendant the Michigan Bonding & Surety Company appeared by another attorney, who likewise filed a separate plea.   During the impaneling of the jury counsel for plaintiff peremptorily ex-

cused two jurors. Counsel for the two individual saloon keepers likewise excused two jurors. Then counsel for the defendant bonding company excused two jurors, whereupon the following occurred:

"*Mr. Rodgers:* Pass the jury for cause. We are content.

"*The Court:* The plaintiff is content with the jury, Mr. McKenna.

"*Mr. McKenna:* I will pass the jury.

"*Mr. Bunting:* I will excuse Mr. Simmerink.

"*Mr. Rodgers:* If the Court please, I desire to object to any further peremptory challenges.

"*The Court:* Just a minute, Mr. Simmerink.

"*Mr. Rodgers:* On the ground that the defense has already exercised four, which is all, I think, they are entitled to.

"*The Court:* I think each defendant— there is no question about the law.

"*Mr. Bunting:* Not a bit.

"*The Court:* At least, I will so hold, that each defendant, represented by entirely separate and different counsel—

"*Mr. Bunting:* Separate and different defendant.

"*The Court:* Who has an entirely different and separate plea, may have the benefit of four peremptory challenges.

"*Mr. Bunting:* No question about it.

"*The Court:* And you may have an exception.

"*Mr. Rodgers:* I desire the record to show that the defendants collectively have exercised four challenges; that is, Mr. McKenna—

"*The Court:* Has had two.

"*Mr. Rodgers:* Has exercised two, and Mr. Bunting two.

"*The Court:* That is right.

"*Mr. Rodgers:* And now Mr. Bunting proposes to exercise—

"*The Court:* Another.

"*Mr. Rodgers:* Another peremptory challenge.

"*The Court:* Yes; the record will show that.

"*Mr. Rodgers:* And I desire an exception to the ruling permitting them so to do.

"*The Court:* You may have the benefit of an ex-

ception. You may be excused, Mr. Simmerink, peremptorily, by Mr. Bunting.".

The plaintiff strenuously urges that this action of the court constitutes reversible error, citing *Stroh* v. *Hinchman,* 37 Mich. 490; *Frazer* v. *Jennison,* 42 Mich. 206 (3 N. W. 882); *People* v. *Welmer,* 110 Mich. 248 (68 N. W. 141); *People* v. *Caruso,* 170 Mich. 137 (135 N. W. 968, Am. & Eng. Ann. Cas. 1914A, 857), and *Levyn* v. *Koppin,* 183 Mich. 232 (149 N. W. 993). Defendants insist that the ruling of the court in this regard was not erroneous, and they rely upon the identical authorities cited by the plaintiff. We pass the fact that the different defendants appeared by different counsel and filed independent pleas, though identical in form, which might be held, perhaps, to be conclusive against the plaintiff's position under the language of this court in the case of *Stroh* v. *Hinchman,* 37 Mich., at page 496, where the court, speaking through Mr. Justice COOLEY, said:

"In our opinion the statute cannot have a reasonable construction, or one which will effectuate its intent, unless the right of separate challenge is allowed to each defendant who pleads separately by different counsel. Any other construction leads not only to injustice, but under some circumstances to absurdities."

We are of opinion that the ruling of the learned circuit judge upon the question raised may be justified upon the ground that the three defendants did not or might not join in one joint defense. It is entirely obvious that the individual defendants might be held liable to respond in damages to the plaintiff while the defendant bonding company could escape such liability by reason of the fact that it might conceivably be able to show that it had never executed the bond in question, or that it was improperly exe-

cuted, or that it was not approved by the common council, nor filed with the county treasurer, or that the bond for any reason did not constitute, as to the surety defendant, a legal obligation. None of these defenses would be open to the two individual defendants who would be liable to plaintiff in case it was proven that she had received an injury from her father while intoxicated through the unlawful sale of liquor to him by the individual defendants. All of the defendants are not liable to the same extent, or for the same reason, or in the same manner. It would seem apparent, therefore, that the plea of the general issue in the case of the individual defendants means, or may mean, something entirely different from the plea of the general issue of the defendant bonding company. A careful reading of the cases cited and relied upon by both parties will, we think, demonstrate the soundness of the ruling of the court which is questioned.

2. There are many assignments of error relating to the admission or exclusion of testimony. We will notice such of them as apparently demand attention. It is plaintiff's claim that error was committed in permitting counsel for defendants during the cross-examination of one Uretz to read into the record a portion of an affidavit made by said witness prior to the trial. The affidavit was first excluded by the trial court on the objection of counsel for plaintiff, but was later admitted for the purpose of impeachment. That only a portion of the affidavit was read appears to have been attributable to the fact that plaintiff's counsel objected to its admission. The record discloses that no attempt was made to have the whole paper go in and counsel for defendants read only that portion thereof which, according to their claim, affected the credibility of the witness. The cases of *Hamilton* v. *People*, 29 Mich. 195, and *People* v.

*Sweeney,* 55 Mich. 586 (22 N. W. 50), cited by plaintiff, are not controlling. The paper offered was admissible as tending to impeach the witness.

Several assignments of error are based upon rulings of the court permitting the defendants to cross-examine Maggie Yonkus, a sister of the plaintiff, and daughter of Charles Yonkus the father of plaintiff, as to trouble which Charles Yonkus had had prior to the incident complained of with his daughter Anna, the plaintiff, as well as with other people. It was the claim of the defendants that plaintiff's father was a man of violent temper and that he had beaten the plaintiff on other occasions when entirely sober. It was likewise their claim that upon the day in question Charles Yonkus was not intoxicated. We have frequently said that the extent to which cross-examination should be permitted is largely addressed to the discretion of the trial judge. We think the case at bar one in which a liberal latitude should have been allowed and are unable to find that there was any abuse of discretion.

Further error is assigned upon the admission of testimony tending to show that on the morning of the day upon which the alleged assault occurred Charles Yonkus had no money with which to purchase liquor. We think this testimony admissible for two reasons:

(1) Tending to impeach the testimony of Charles Yonkus who swore that he did have money.

(2) It had a direct bearing upon one of the main issues in the case which was whether at the time of the assault Charles Yonkus was in fact intoxicated.

While it is improper to permit impeaching evidence regarding matters not material to the issue, we are of opinion that the rule is not applicable to the situation here under consideration.

186 Mich.—14.

3. Many errors are assigned upon the charge of the court. The principal complaint of counsel for plaintiff appears to lie in the fact that the court submitted to the jury the issue resolved into four elements:

(1) That plaintiff was assaulted and injured by Yonkus.

(2) That Yonkus was intoxicated when he committed the assault.

(3) That his intoxication was contributed to by liquor furnished by defendants.

(4) That Yonkus was a person in the habit of getting intoxicated.

It is the claim of plaintiff's counsel that as to the first, second, and fourth elements of the offense charged the court should have instructed the jury that the plaintiff had made out a case by undisputed testimony. After a careful examination of this record we are unable to agree with the contention of counsel for plaintiff.

Touching the assault and the condition of Yonkus as to intoxication at the time the alleged assault was made, the only witnesses were the plaintiff and members of her immediate family including her father, Charles Yonkus, by whom plaintiff claims she was assaulted. It is quite true that the members of the family swore to the intoxication of Charles Yonkus and to the assault. There is, however, certain testimony in the case tending to cast doubt on some of the testimony given by the plaintiff and her witnesses.

But even assuming that these facts material to the issue had been proven by plaintiff and her witnesses without direct contradiction by any witnesses for the defendant, we are of opinion that it still would not be error for the court to instruct the jury that they must find those facts proven by a fair preponderance of the evidence. To hold that in all cases when a witness swears to a certain fact the court must instruct

the jury to accept that statement as proven, would be to establish a dangerous rule. Witnesses sometimes are mistaken and sometimes unfortunately are wilfully mendacious. The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make. As was said by Mr. Justice COOLEY in the case of *Woodin* v. *Durfee,* 46 Mich. 424 (9 N. W. 457), it may well be said here:

"But the difficulty is that the facts were not conceded or beyond dispute: there was evidence of them which probably ought to have satisfied any one to whom it was addressed; but evidence is for the jury, and the trial judge cannot draw conclusions for them. It is said that on some points there was no evidence of a conflicting nature; but that does not aid the claimant. A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment."

The charge, in our opinion, is not open to just complaint.

The judgment is affirmed.

McALVAY, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.