REITENGA v. KALAMAZOO CREAMERY CO.

1. MASTER AND SERVANT—INSTRUCTIONS—RESPONDEAT SUPERIOR.
   In motorist's action against creamery company and its employee for injuries sustained by plaintiff in collision with creamery truck, instruction relative to subject of *respondeat superior held*, not to disclose any error of law.

2. AUTOMOBILES—CREAMERY TRUCK—CONSENT TO USE BY EMPLOYEE —QUESTION FOR JURY.
   Question of whether creamery truck employee who was operating truck at time of the accident on direct route from creamery to his home where he expected to spend the night was using truck within express or implied consent of owner *held*, properly left for jury (1 Comp. Laws 1929, § 4648).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted January 6, 1939. (Docket No. 68, Calendar No. 40,352.) Decided March 9, 1939.

Case by Duane L. Reitenga against Kalamazoo Creamery Company, a Michigan corporation, and Glen Northrup for damages for personal injuries sustained in an automobile collision. Verdict and judgment for plaintiff. Defendant Kalamazoo Creamery Company appeals. Affirmed.

*Earl L. Burhans* and *Mason, Sharpe & Stratton,* for plaintiff.

*Howard, Howard & Howard,* for defendant Kalamazoo Creamery Company.

BUSHNELL, J. Defendant Kalamazoo Creamery Company seeks reversal of a judgment obtained by

plaintiff for damages arising out of a collision between two automobiles in the city of Kalamazoo during the early hours of Monday morning, April 19, 1937. The questions raised by appellant have to do with its claim that defendant Northrup was not driving the company's truck with the consent, express or implied, of his employer or within the scope of the alleged permission. Plaintiff says the only question is:

"Does the record present proper issues of fact as to whether or not, at the time in question, the truck of the appellant was being driven with the express or implied consent or knowledge of the owner?"

Northrup had been in appellant's employ for about two months prior to the accident. On three days of the week he delivered ice cream mixture over an established route to cities north and west of Kalamazoo, returning between the hours of 4:30 and 5 o'clock; on other days he made special deliveries of milk and other products around town. Defendant company operated a fleet of 28 trucks, including special delivery vehicles for emergency orders. The keys to the special delivery trucks were kept in these vehicles, which were generally parked in a lot near the creamery. On the day preceding the accident, Northrup finished work about 1:30 in the afternoon and was not required to report again until 6 or 6:30 o'clock the following morning. Appellant's plant superintendent gave Northrup permission to use a stake body truck on the day before the accident for the purpose of moving his mother's household effects. Northrup said he returned this truck to the parking lot of the company between 9 and 9:30 o'clock Sunday evening. He then visited several taverns, in company with friends, where he had some

beer, returned to the parking lot, and took one of the special delivery trucks to drive to his home in Kalamazoo, where he intended to spend the night. It was on this trip that the accident occurred.

Northrup was called as an adverse witness by plaintiff and testified that, when he was employed by appellant, he was informed that his duties required him to be at the creamery at 7 o'clock in the morning, and sometimes earlier; that he told appellant's sales manager, Bresson, that he lived about three miles from the creamery and would need some means of transportation because of the lack of bus service, and that he was advised by Bresson there were plenty of trucks that could be used. He said that after he started to work he used a creamery company truck in the manner suggested on an average of three to five times a week.

At the close of plaintiff's testimony, the court reserved decision on defendant's motion for a directed verdict. Northrup's testimony regarding the company's practice in permitting the use of its trucks was contradicted by Knox Wicks, general manager of the creamery company, Bresson, and others. There runs through the testimony of defendant creamery company's witnesses, however, evidence of loose control over the use of trucks that stood in the parking lot as well as permissive use by Northrup and others on certain occasions. At the close of the case, defendant creamery company renewed its motion for a directed verdict, on which the court again reserved decision. The court charged the jury that if it found Northrup guilty of negligence, the liability of the creamery company depended upon whether or not Northrup was then driving the car with the express or implied consent or knowledge of the creamery company. 1 Comp. Laws 1929, § 4648 (Stat. Ann.

§ 9.1446). The court went into considerable detail with respect to this question. A careful reading of the several pages of the charge devoted to the subject of *respondeat superior* does not disclose any error of law.

Plaintiff's testimony is that Northrup was given permission by Bresson, the sales manager, and DeSmit, the wholesale route supervisor, to use appellant's trucks in order that Northrup might arrive at the creamery early enough in the morning to begin his deliveries. Each of these denied giving such consent, and they and others claimed that neither of them had authority to authorize the personal use of trucks by Northrup.

On cross-examination DeSmit said:

"Mr. Bresson was in general charge of the delivery proposition. He was the man in general charge of sales. I am sales manager under Mr. Bresson, but my work is limited to the wholesale work. We both had authority to direct the distribution of our products. In directing the distribution of our products, we, of course, had authority over the activities of the salesmen under us, and of the trucks they were using, during their work. We designated the use of the trucks. That was generally known and recognized around the place. As far as the exercise of any authority was concerned, Mr. Bresson and I were the two people who exercised the authority over the trucks for the distribution of our products; and for the use of the trucks."

This indicates apparent authority on the part of these men to grant the claimed consent.

Appellant argues that *Anderson* v. *Schust Co.,* 262 Mich. 236, is controlling and that a verdict for defendant should have been directed. In the *Anderson Case* the consent was given by defendant's

agency manager, who was not acting at the time within the apparent scope of his authority or in furtherance of the business of defendant but in violation of its positive orders and instructions.

Appellant cites *Merritt* v. *Huron Motor Sales, Inc.,* 282 Mich. 322, and argues that, even assuming a valid and binding permission was given, this does not impose liability unless, at the time of the accident, Northrup was operating the vehicle within the limits of the alleged permission. It is undisputed in the instant case that Northrup was traveling on the direct route from the creamery to his home at the time of the accident. In any event, this was a question of fact for the jury.

An examination of the testimony presented requires the conclusion that the question of express or implied consent was one of fact and that the court was not in error in declining to direct a verdict for defendant. *Kerns* v. *Lewis,* 249 Mich. 27, *Scott* v. *Wallace,* 251 Mich. 28.

Judgment for plaintiff is affirmed, with costs to appellee.

Butzel, C. J., and Wiest, Sharpe, Potter, Chandler, and McAllister, JJ., concurred. North, J., took no part in this decision.