## CEBULAK *v.* LEWIS.

1. AUTOMOBILES—PRIVATE DRIVEWAY—PUBLIC STREET—STOPPING.
   A motorist in a private driveway has the duty of coming to a full stop before entering a public street (1 Comp. Laws 1929, § 4713, as amended by Act No. 318, Pub. Acts 1939).

2. SAME—PEDESTRIAN IN PRIVATE DRIVEWAY—CREDIBILITY—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   Where plaintiff pedestrian and a companion were near curb line in a private driveway and were struck by defendant's car coming from parking lot on other side of sidewalk and testimony of plaintiff and his companion and that of defendant motorist present conflicting stories as to manner in which accident occurred, the credibility of their testimony and whether or not plaintiff was guilty of contributory negligence were for the jury (1 Comp. Laws 1929, § 4713, as amended by Act No. 318, Pub. Acts 1939).

3. TRIAL—EVIDENCE—VERDICT—NEW TRIAL.
   A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment; although he may set aside the verdict and order a new trial.

4. EVIDENCE—CIRCUMSTANTIAL AND DIRECT EVIDENCE.
   Circumstantial evidence in support of or against a proposition is equally competent with direct and, as against each other, their relative convincing power is for the jury.

5. SAME—CONTRADICTIONS—IMPROBABILITIES.

If testimony, though not directly contradicted, is contrary to circumstances in evidence, or if it contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence may excite suspicion as to the truth of the testimony, it may be disregarded by the jury.

6. SAME—PRESUMPTIONS.

A presumption disappears when competent testimony to rebut the same has been adduced and cannot be weighed in the balance in considering the effect of such testimony when so received.

7. AUTOMOBILES—DANGEROUS INSTRUMENTALITY.

An automobile, if driven by an inexperienced, incompetent or reckless driver, partakes of the nature of a dangerous instrumentality by reason of the danger which lies in the possible improper methods of its use.

8. SAME—CONSENT OF OWNER—PRESUMPTIONS—STATUTES.

The difficulty of showing that an automobile is being driven with the consent of the owner except by evidence of facts and circumstances, where the owner and driver may be the only persons who can directly testify that no consent was given to drive the car, has a distinct bearing on the construction of the statutory presumption that car driven by an immediate member of the owner's family is driven with his consent (1 Comp. Laws 1929, § 4648).

9. SAME—CONSENT OF OWNER—PRESUMPTION—EVIDENCE.

The statutory presumption that a car driven by an immediate member of the owner's family is driven with his consent may be overcome by direct and credible evidence to the contrary (1 Comp. Laws 1929, § 4648).

10. EVIDENCE—PRESUMPTIONS.

Not all presumptions have the same effect.

11. AUTOMOBILES—CONSENT OF OWNER—PRESUMPTIONS—REBUTTAL.

Unless the defendant motorist proves the actual circumstances of the case, the presumption that a car driven by an immediate member of the owner's family was driven with his consent is not rebutted (1 Comp. Laws 1929, § 4648).

12. SAME—CONSENT OF OWNER—OWNER'S INSTRUCTIONS.

The statutory liability of an owner of an automobile where it is used by another is predicated upon owner's consent to the use of it by another and damages arising from resultant negligent operation and is not avoided by operation in violation of owner's instructions to operate it in a certain way (1 Comp. Laws 1929, § 4648).

13. APPEAL AND ERROR—CREDIBILITY OF WITNESSES—WEIGHT OF EVIDENCE—PRESUMPTIONS.

The Supreme Court does not substitute its judgment for that of the jury as to the credibility or weight to be accorded testimony of defendant motorists, offered to rebut statutory presumption that car was being driven with owner's consent where driven by his 17-year-old daughter (1 Comp. Laws 1929, § 4648).

14. AUTOMOBILES—CONSENT OF OWNER—QUESTION FOR JURY.

Whether or not defendant 17-year-old daughter of defendant car owner was driving car with her father's consent *held,* properly submitted as a question of fact for jury in pedestrian's action for injuries (1 Comp. Laws 1929, § 4648).

15. SAME—ARGUMENT TO JURY—REFERENCE TO STATUTORY PRESUMPTION OF CONSENT OF OWNER.

In pedestrian's action against car owner and his 17-year-old daughter who was driving it when plaintiff was injured, it was not so improper for plaintiff's counsel to refer to the statutory presumption of owner's consent to have daughter drive the car in the statements to the jury at the opening of the case and after closing the proofs, where the presumption might control if not rebutted, that motion for new trial should have been granted (1 Comp. Laws 1929, § 4648).

16. TRIAL—CROSS-EXAMINATION AS TO TRAFFIC TICKETS IN CIVIL ACTION FOR PERSONAL INJURIES.

In pedestrian's action against 17-year-old motorist and her father, the car owner, for personal injuries sustained, it was not error to permit plaintiff's counsel to cross-examine her as to receiving traffic tickets for failing to yield right of way and for not having a driver's license.

17. COSTS—BRIEFS.

No costs are allowed appellee on affirmance of judgment where he filed no brief in Supreme Court.

Appeal from Saginaw; Holland (Robert T.), J. Submitted January 6, 1948. (Docket No. 4, Calendar No. 43,733.) Decided April 5, 1948.

Case by Roman Cebulak against Henry C. Lewis and Betty Lewis for personal injuries sustained when he was hit by defendant's automobile. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Heilman & Purcell,* for defendants.

BOYLES, J. This is an automobile personal injury damage case tried by jury, resulting in verdict and judgment for the plaintiff in the sum of $5,000. During the trial, and also after verdict, the defendants made appropriate and timely motions for a directed verdict, for judgment notwithstanding verdict, and for a new trial, all of which were in due course denied. On this appeal, the defendants are seeking reversal claiming that such motions should have been granted, or that defendants should be granted a new trial, on the grounds (1) that the proofs showed plaintiff to be guilty of contributory negligence as a matter of law, (2) fail to show that the automobile was being driven by defendant Betty Lewis, the daughter of defendant Henry C. Lewis, with his knowledge or consent, (3) improper statements of plaintiff's counsel in opening the case and in his argument to the jury, (4) error in permitting certain questions on cross-examination of the defendant Betty Lewis.

On January 28, 1944, the plaintiff was struck and injured by an automobile owned by defendant Henry C. Lewis while being driven by his daughter Betty, then 17 years of age. Plaintiff and the defendant Betty Lewis both were employees of Wilcox-Rich Corporation, a manufacturing concern which had two plants on opposite sides of Rust street running east and west in Saginaw. About a half hour before midnight on said January 28th the plaintiff left that plant of his employer, which was situated on the south side of Rust street, went east along the south sidewalk to a private driveway which led from the sidewalk to the street, said driveway being the outlet of a parking lot owned by the Raymond Products Company. The plaintiff claims that he then looked both ways along said driveway, and then proceeded down the driveway for the purpose

of crossing Rust street and entering another parking lot on the opposite side. While in this driveway plaintiff was struck by the automobile of the defendant Henry C. Lewis, driven by the defendant Betty Lewis. She was driving the automobile out of the Raymond parking lot down said driveway, between the sidewalk and the curb line of Rust street, for the purpose of entering Rust street. Thus far the facts are not in dispute.

## 1. *Plaintiff's Contributory Negligence.*

The plaintiff testified that he and his companion, who was a fellow employee of Wilcox-Rich, turned into the Raymond driveway from the sidewalk, walked the 3 or 4 feet to reach the curb, and stopped in the driveway near the curb, that they waited there for 2 or 3 cars to pass on Rust street, that plaintiff did not see any automobile coming down from behind him in the driveway, did not hear any horn or see any lights coming back of him, and while standing there was struck by the defendants' automobile coming down the driveway behind him. He testified that when he entered the driveway he looked both ways, no automobile was coming out of the parking lot, that they walked down the driveway about three feet and stopped at the curb. His testimony was corroborated by that of his companion, who testified that he was also hit by the automobile and "spun around" but not knocked down. This witness testified that the automobile continued on across the street, that the plaintiff was carried by it across the street, that the headlights and taillight of the automobile were not turned on, and that no horn was sounded. He testified that he and the plaintiff had made a square turn from the sidewalk into the driveway, that they did not cut across the

corner, and that they were in the driveway when struck.

The testimony of the defendant Betty Lewis is to the contrary. She testified that she finished working at 11:30 p.m., got into the automobile, turned on the lights and motor, drove out to the sidewalk, stopped, then started again. As to how the accident happened, she testified:

"I stopped right by the sidewalk just when I got to the sidewalk, and then I didn't see anybody and I started again. After I had stopped before I got to the sidewalk, I started again, and there was 2 men that ran, they started right in front of the car, and I couldn't stop. They were running. I don't remember what gear I was in, but I was just starting up there. I was excited. When they ran in front of the car I tried to stop, but I couldn't. I just couldn't stop. I became excited and confused and I just couldn't move. * * *

"I didn't see the plaintiff until he ran in front of the car. When he ran in front of it, my car was about half-way down the driveway. The first time I saw him, he was in front of the car and I don't remember seeing the other man. The first time I saw the plaintiff here, he was right in front of my car, and I can't say how far the plaintiff was in front of my car when I saw him first. This all happened in an instant, and there wasn't very much time, and when I saw him in front of my car, I became confused then, and I didn't move my foot. I couldn't move. I tried to, but I couldn't apply my brakes. * * * I don't know which way the plaintiff was facing when I saw him there first. The only thing I actually know is that he was there in the driveway when I saw him first, and he was running. He was running toward the other parking lot across the street."

Obviously both stories could not be true. The driveway where the accident occurred was a private driveway. It was the duty of Betty Lewis to come to a full stop before entering Rust street. 1 Comp. Laws 1929, § 4713, as last amended by Act No. 318, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 4713, Stat. Ann. 1947 Cum. Supp. § 9.1581). The trial court properly refused to direct a verdict for the defendants, or to set aside the verdict on defendants' motion for judgment notwithstanding the verdict on the ground that the plaintiff was guilty of contributory negligence as a matter of law. Under the conflicting testimony in the case, its credibility and the question whether plaintiff was guilty of contributory negligence were for the jury.

### 2. *Knowledge or Consent of the Owner.*

At the trial this question became the controlling issue in the case and is now mainly relied upon by the defendants for reversal. Admittedly, the defendant Henry C. Lewis was the owner of the automobile and at the time of the injury it was being driven by his daughter Betty Lewis. The applicable statute (3 Comp. Laws 1929, § 4648 [Stat. Ann. § 9.1446]) provides:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge. It shall be presumed that such motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of said injury by his or her

father, mother, brother, sister, son, daughter, or other immediate member of the family.''

At the time of the accident defendant Henry C. Lewis was in Florida. Obviously his daughter Betty was driving his automobile on the night in question without his personal knowledge. The precise question therefore is whether she was driving the automobile at that time with his consent, express or implied. There is some question whether Betty had his express consent to use the car in going to and from her work. They both specifically testified that he had told his daughter not to drive the car except for an emergency, but there is some testimony to the effect that she might use the car to go to work if she was late, and Betty admitted that she was late for work on the night in question. He admitted that he left the automobile, the keys and the title with his daughter. He stated that he wanted his daughter to be able to drive the car or dispose of it if a fatal accident happened to him on his journey to Florida. Although he knew she had no driver's license he left the automobile in her charge. It was in good running order, had gasoline, all that his daughter needed to do was put the key in and run it. He knew Betty had driven the car before, without his consent. On cross-examination he admitted that he

''left her in complete charge of the car and the title.   *   *   *

''*Q.* So you more or less left her with the understanding that if an emergency happened that she could use it?

''*A.* I don't remember using words to that effect, but if you put it that way, it might be.''

Betty testified she was late for work that day, and her father admitted that his daughter being late for

work might be termed an emergency. At the conclusion of all the testimony, counsel for the defendants moved for a directed verdict for the defendant Henry C. Lewis on the ground that there was no testimony to show that he had given his consent to the daughter to use the automobile. The court reserved decision, and after the verdict denied the motion.

Appellants claim that the court was in error in submitting to the jury the question whether Betty was driving the automobile with the implied consent of her father, that a judgment of no cause of action should have been entered for both the defendants notwithstanding the verdict; or that in any event a judgment of no cause of action should be entered in favor of the defendant Henry C. Lewis and a new trial granted as to the defendant Betty. Appellants claim that the positive testimony of both Betty Lewis and her father, to the effect that he had told her she was not to drive the automobile except in case of emergency, had overcome the presumption of the statute that she was driving the automobile with his consent. In that connection appellants' argue that their positive testimony to that effect is uncontradicted, wherefore it must be considered to prevail. With this contention we do not concur. There is testimony from which the jury might reach the opposite conclusion.

Mr. Justice COOLEY, writing for the Court in *Woodin* v. *Durfee,* 46 Mich. 424, said:

"The most of these facts the claimant insists are entirely undisputed on the evidence; and she claims that they establish beyond question the liability of Staley on the bond, and that the judge was at liberty to so instruct the jury. But the difficulty is that the facts were not conceded or beyond dispute: There was evidence of them which probably ought to have

satisfied any one to whom it was addressed; but evidence is for the jury, and the trial judge cannot draw conclusions for them. It is said that on some points there was no evidence of a conflicting nature; but that does not aid the claimant. A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment. If they return what he thinks is a perverse verdict, he may set it aside and order a new trial; but he cannot take upon himself their functions as was done here."

In *Yonkus* v. *McKay,* 186 Mich. 203 (Ann. Cas. 1917 E, 458), the Court said:

"But even assuming that these facts material to the issue had been proven by plaintiff and her witnesses without direct contradiction by any witnesses for the defendant, we are of opinion that it still would not be error for the court to instruct the jury that they must find those facts proven by a fair preponderance of the evidence. To hold that in all cases when a witness swears to a certain fact the court must instruct the jury to accept that statement as proven, would be to establish a dangerous rule. Witnesses sometimes are mistaken and sometimes unfortunately are wilfully mendacious. The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make."

In *Ricketts* v. *Froehlich,* 218 Mich 459, in reversing the trial court where a verdict for the defendant had been directed, this Court said:

"Plaintiff's evidence of the identity of the tort feasor responsible for this fatal accident was necessarily circumstantial. Circumstantial evidence in support of or against a proposition is equally competent with direct. As against each other their relative convincing power is for the jury. The trial

court apparently assumed that defendant's direct denial must be taken as true against all circumstantial evidence introduced. * * * There was ample circumstantial evidence from which the jury in balancing probabilities might fairly conclude that he was the driver of the car which caused the accident. His testimony, backed by an impelling motive, was not so consistent, clear and convincing that the jury was bound to accept it in its entirety as conclusive proof. It was for them and not the court to pass upon his credibility."

"If testimony, though not directly contradicted, is contrary to circumstances in evidence, or if it contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence may excite suspicion as to the truth of the testimony, it may be disregarded by the jury. Uncontradicted testimony may be disentitled to conclusiveness because, from lapse of time or other circumstances, it may be inferred that the memory of the witness is imperfect as to the facts to which he testified, or that he recollects what he professes to have forgotten." *Cuttle* v. *Concordia Mutual Fire Ins. Co.,* 295 Mich. 514.

In *Wingett* v. *Moore,* 308 Mich. 158, this Court said:

"The controlling question presented on this appeal is stated by appellant Moore as follows:
" 'Was there, either at the close of plaintiff's proofs or at the close of all the proofs, any substantive evidence to present a jury question as to the credibility of witnesses, or to permit the jury to determine whether or not the operator of defendant's car was, at the time and place of the accident, driving the same with the knowledge or consent, either express or implied, of the defendant?' "

In the above case the Court affirmed a verdict and judgment for the plaintiff under circumstances

where consent by the owner of an automobile for its use by another had been implied from the facts and circumstances of the case.

Appellants rely on *Christiansen* v. *Hilber,* 282 Mich. 403, where the Court (syllabus) held:

"Testimony of unimpeached witnesses, who testify distinctly and positively to a fact and who are uncontradicted, should be credited and has the effect of overcoming a mere presumption."

However, in that case the testimony was positive and uncontradicted by any facts or circumstances, that the truck was bought, kept and used solely for business purposes, that the owner never gave anyone any permission to use it for pleasure purposes, and that it was used by the owner's son for pleasure purposes on the occasion in question without the owner's knowledge or consent. Likewise, in *Merritt* v. *Huron Motor Sales, Inc.,* 282 Mich. 322, also relied upon by appellants, the owner had loaned his automobile to the defendant Schuon at Ann Arbor for the express purpose of going to Brighton, on the condition that it would be returned to the owner at his home by .10 o'clock p.m. so that he could use it. Instead of returning the automobile· within the time limit set, the borrower later was driving the automobile to Detroit, in the opposite direction from Ann Arbor, with three companions, at the time of the accident. The holding of the Court in that case, in nowise controlling under the facts and circumstances of the instant case, was that:

"There is no substantive testimony in this record tending to support the essential element of plaintiff's case, namely, that at the time and place of the accident this automobile was being driven with the express or implied consent or knowledge of appellant."

It is readily apparent from an examination of its. decisions that this Court has held, under statutes and circumstances differing from those in the case at bar, that a presumption disappears when competent testimony to rebut the same has been adduced; and that a presumption cannot be weighed in the balance in considering the effect of such testimony when so received. This question has more frequently arisen under 3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 12063, Stat. Ann. 1943 Rev. § 23.303), providing that the making of a joint bank deposit shall be considered prima facie evidence of an intention to vest title to the same in the survivor. Such presumption disappears and has no weight as evidence when challenged by rebutting testimony. *Allstaedt* v. *Ochs,* 302 Mich. 232; *Manufacturers National Bank* v. *Schirmer,* 303 Mich. 598; *Mitts* v. *Williams,* 319 Mich. 417; *Pence* v. *Wessels, ante,* 195.

The same result has been applied with like effect with reference to the presumption that a deed of property to one in a confidential and fiduciary relationship will be considered as having been procured through undue influence until rebutted by competent testimony (*Hill* v. *Hairston,* 299 Mich. 672), and also to the presumption of a mother's fitness for custody of a child under 12 years of age (*Eichholtz* v. *Eichholtz,* 319 Mich. 42).

The precise question now before us is as follows: Under what facts and circumstances, as shown by the testimony, is it proper for the trial court to submit to the jury as an issue of fact, and as a jury question, whether the automobile was being driven by the defendant Betty Lewis with her father's implied consent. While an automobile in and of itself is not a dangerous instrumentality (*Brinkman* v. *Zuckerman,* 192 Mich. 624; *Tanis* v. *Eding,* 265

Mich. 94), we must give recognition to the fact that an automobile, if driven by an inexperienced, incompetent or reckless driver, partakes of the nature of a dangerous instrumentality by reason of the danger which lies in the possible improper methods of its use. This fact removes the presumption that the automobile is being driven with the owner's knowledge or consent from the field of those statutory presumptions applying to joint bank accounts, undue influence, or custody of a minor child, and the like. The difficulty of showing the consent of the owner except by evidence of facts and circumstances, where the owner and the driver may be the only persons who can directly testify that no consent was given to drive the car, has a distinct bearing on the construction of the statutory presumption here involved. As originally enacted, this statute (Act No. 302, § 29, Pub. Acts 1915 [1 Comp. Laws 1915, § 4825]) provided that in the event of an automobile being driven by an immediate member of his family, it should be *conclusively* presumed that it was being driven with the owner's knowledge or consent. This was retained by Act No. 287, Pub. Acts 1925, but, removed by an amendatory act, Act No. 56, Pub. Acts 1927 (1 Comp. Laws 1929, § 4648 [Stat. Ann. § 9.1446]). Since that time this Court has held that the statutory presumption of the consent of the owner may be overcome by direct and credible evidence to the contrary. *Transcontinental Ins. Co.* v. *Berens,* 254 Mich. 613; *Karl* v. *Gary,* 255 Mich. 621.

From the foregoing we conclude that not all presumptions have the same effect. As has been said, some presumptions disappear when competent evidence to the contrary is adduced to rebut the same. Other presumptions differ as to effect. The presumption of legitimacy of a child born in lawful

wedlock is one of the strongest known to law, founded upon public policy. *Kotzke* v. *Kotzke's Estate,* 205 Mich. 184. The presumption of innocence of crime can be overcome only by evidence that convinces of guilt beyond a reasonable ·doubt. The statutory presumption now under consideration in the instant case can be overcome only by evidence that is clear, positive and credible. *Transcontinental Ins. Co.* v. *Berens, supra; Karl* v. *Gary, supra; Christiansen* v. *Hilber, supra.* This would seem to cast upon the defendants here the burden of producing clear, positive and credible proof to overcome the presumption that the defendant Betty Lewis was driving ·her father's automobile at the time of the injury with at least her father's implied consent.

In *O'Dea* v. *Amodeo,* 118 Conn. 58, 63–67 (170 Atl. 486) the nature and functions of rebuttable presumptions are discussed at length. The case involved the effect of a statutory presumption that an automobile operated by the husband, wife, father, mother, son or daughter of the owner was operated with the owner's authority. After analyzing the effect of various rebuttable presumptions, the court said:

"But where the circumstances involved in an issue are peculiarly within the knowledge of one party and his power to bring them before the court, in certain instances the law' deems it fit that he should have the burden not merely of offering some substantial countervailing evidence but of proving such circumstances. * * *

"The statute involved in this case in terms goes no farther, after stating the presumption, than to put the burden of rebutting it upon the defendant, and our question is, what did the legislature intend by this provision. If in this instance the intent of the legislature was to do no more than to establish

a presumption which would be rebutted by the production of substantial countervailing evidence, the last provision in the statute would serve no purpose, and we must assume that by its inclusion the legislature intended some further effect.  *  *  *

"To construe the statute as meaning that the presumption would be rebutted as soon as substantial countervailing evidence was offered, would necessarily mean that, when the defendant had offered such evidence, the presumption would not only cease to operate, but the burden of proof would be upon the plaintiff unaided by inferences from the facts which gave rise to the presumption, and in the absence of sufficient evidence to sustain that burden the defendant must prevail, even though the trier entirely disbelieved the testimony offered by the defendant.  *  *  *  However that may be, the situation presented is similar to those to which we have referred where the presumption rests upon the fact that the circumstances involved in the issue are peculiarly within the knowledge of the defendant, and as to which we have said that unless the defendant proves the actual circumstances of the case, the presumption is not rebutted.  *  *  *

"In the instant case the plaintiff offered no evidence, other than that the car was operated by the son of the owner, to support his contention that the automobile which caused the accident was maintained by the defendant as a family-car and that the son was operating it within the scope of a general authority to do so. The defendant testified that the car was not maintained for the general use of the members of his family and both he and his son testified that the latter had no general permission to operate it, that on the occasion in question he had no permission to use it and that the father did not know that he had taken it until after the accident occurred.  *  *  *

"In certain respects the testimony of both father and son was contradicted and they were of course much interested witnesses.  *  *  *  In this situa-

tion we cannot say that the jury were compelled to accept as true the testimony of the father and son.''

In *Scott* v. *Wallace,* 251 Mich. 28, one Herrig was driving an automobile owned by the defendant Wallace and became involved in a collision with the plaintiff's car. The question whether Herrig was driving the car with the owner's consent was submitted to the jury, resulting in a verdict for the plaintiff. Herrig and Wallace were not members of the same family, hence the issue of a presumptive consent was not involved. Defendant Wallace had left his automobile and his car key with his wife while he was away on a trip, and testified that he told her not to let anyone else drive it. She allowed Herrig to drive it and the accident resulted. The Court held that the question of the owner's consent was for the jury.

See, also, *Kerns* v. *Lewis,* 246 Mich. 423; *Reitenga* v. *Kalamazoo Creamery Co.,* 288 Mich. 161 (8 N. C. C. A. [N. S.] 28).

''The statutory liability of an owner of an automobile where it is used by another is predicated upon owner's consent to the use of it by another and damages arising from resultant negligent operation and is not avoided by operation in violation of owner's instructions to operate it in a certain way or only when the driver was alone or accompanied by nonpaying passengers (1 Comp. Laws 1929, § 4648).'' *Sweeney* v. *Hartman* (syllabus), 296 Mich. 343.

In *Allen* v. *Massachusetts Mutual Life Ins. Co.,* 149 Neb. 233 (30 N. W. [2d] 885), decided by the Nebraska supreme court February 6, 1948, the question was as to the effect of the presumption that death is not caused by suicide. The trial court was upheld in submitting to the jury the question of fact,

whether the presumption had been overcome by the evidence, and in instructing the jury that the burden of proof to overcome the presumption was on the defendant, in that case the insurance company.

The credibility to be given the testimony of the defendants in the case at bar was for the jury. Jurors in testing credibility have the advantage of hearing the witnesses and observing their demeanor and manner of testifying on the witness stand. The record before us indicates that both defendants were evasive under cross-examination and to some extent their testimony was uncertain on material issues in the case. They were not disinterested witnesses. Henry C. Lewis admitted that he did not remember exactly what he told his daughter about her using the automobile. We do not substitute our judgment for that of the jury as to the credibility or the weight to be afforded the defendants' testimony. We conclude that the trial court properly left the jury to decide as a question of fact whether the defendant Betty Lewis was driving the automobile with her father's consent.

### 3. *Plaintiff's Counsel's References to the Presumption.*

In his opening statement to the jury and again in his argument to the jury after the closing of the proofs, counsel for the plaintiff referred to the statutory presumption that the use of the automobile by defendant Betty Lewis was with the owner's consent. There is no merit in defendants' claim that their motion for a new trial should have been granted because plaintiff's counsel had been permitted to do so. At the beginning of the trial the statutory presumption existed, that the automobile was being driven by his daughter Betty with the knowledge or consent of the defendant Henry C.

Lewis, the owner. At that time, before the taking of any testimony, the presumption might control. *Eichholtz* v. *Eichholtz, supra; Mitts* v. *Williams, supra; Pence* v. *Wessels, supra.* Counsel for the plaintiff had the right to refer to the statutory presumption. Under the circumstances of this case the question whether the presumption had been overcome or rebutted by the testimony was still in the case, to be submitted to the jury after the proofs were closed.

4. The trial court permitted cross-examination of Betty Lewis as to whether she had been charged with failing to yield the right of way to a pedestrian, as a result of the accident. She admitted having received two traffic tickets, one for failing to yield the right of way and one for not having a driver's license. She admitted over defendants' objection that her father "took it (the ticket) down and paid the fine." Doubtless counsel for the defendants made too much showing of importance of this matter before the jury. However, it was not error to permit the cross-examination. *Zimmerman* v. *Goldberg,* 277 Mich. 134; *Socony Vacuum Oil Co.* v. *Marvin,* 313 Mich. 528.

Other claimed errors have been examined and are considered to have no substantial merit. The judgment is affirmed but without costs, appellee not having filed a brief in this Court.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.