RICKETTS *v.* FROEHLICH.

TRIAL—EVIDENCE—CIRCUMSTANTIAL EVIDENCE AS OPPOSED TO DIRECT TESTIMONY—QUESTION FOR JURY.

> In an action for the wrongful death of plaintiff's decedent, alleged to have been caused by defendant's recklessly driving his automobile at an excessive rate of speed directly across a well-defined safety zone in a city street, where there was ample circumstantial evidence from which the jury in balancing probabilities might fairly conclude that defendant was the driver of the car which caused the accident, the trial court was in error in directing a verdict in favor of defendant, notwithstanding his denial that he was the driver of the car and the lack of testimony positively identifying him as such.

Error to Wayne; Webster (Arthur), J. Submitted January 3, 1922. (Docket No. 15.) Decided June 5, 1922.

Case by Mary Ricketts, administratrix of the estate of Alexander W. Ricketts, deceased, against Edward

A. Froehlich for the alleged negligent killing of plaintiff's intestate. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Dohany & Dohany,* for appellant.

*S. Homer Ferguson,* for appellee.

Steere, J. At about 9 o'clock in the evening of January 31, 1918, plaintiff's husband was run over and fatally injured by an automobile while standing in a safety zone on Gratiot avenue in the city of Detroit just east of Riopelle street on the north side of the Gratiot avenue car tracks waiting to take a street car. The automobile was recklessly driven at an excessive speed of over 25 miles an hour directly across the well defined safety zone near the middle of which deceased stood, knocking him down with its left front fender, both the left front and rear wheels passing over his body. After striking him the driver of the automobile sped on, ignoring signals and other attempts of bystanders to stop him, disappearing down the street at increasing speed. Two young men standing close by barely escaped being struck by the car. One was a salesman for the Detroit Screw Works and the other a student at the Cass technical high school. Both caught the license number of the car, 29,238, which was given to a patrolman who came to the scene of the accident. He made the customary investigation, took the names of witnesses and turned in a report of the accident with the number of the car, which a witness had identified as a Dodge, when he went off duty that night. In the confusion of the accident and rapid passing of the car none of the witnesses saw the man sitting within and driving it sufficiently plain to identify him.

Four days before the inquest on deceased the police authorities had found a Dodge automobile bearing li-

cense number 29,238 at 1565 Mack avenue where a
tin shop was located called the Garland Tin Shop. The
business conducted there was then incorporated. De-
fendant was its president, his wife secretary and
treasurer and his brother vice-president, the three con-
stituting the incorporators. Defendant resided in
rooms over the tin shop. The license for the car
found there was issued to the Garland Tin Shop
Corporation, application therefor having been signed
and verified by defendant. He was accustomed to
drive this car and admitted he was out with it alone
the night of the accident and drove it down town,
but denied he went by Gratiot avenue and claimed to
have been in another part of the city when the acci-
dent is said to have occurred. The car was later
taken to the police station and seen by several wit-
nesses who were not permitted by the court to testify
to the condition of its left front fender, claimed by
the plaintiff to have been bent or dented.

At conclusion of the testimony the trial court di-
rected a verdict for defendant, saying in part:

—"the only showing made by the plaintiff to connect
Mr. Froehlich with the driving of this car is the con-
nection with the car in the neighborhood of 7:30 at
the corner of Canfield and Sheridan and again at
10:30 driving down town by a different route from
Gratiot avenue. * * * there is no evidence in this
case from which you would be warranted in finding
that he was actually driving the car."

Plaintiff's only assignment of error is directed
against this disposition of the case by the court.

Plaintiff's evidence of the identity of the tort feasor
responsible for this fatal accident was necessarily cir-
cumstantial. Circumstantial evidence in support of
or against a proposition is equally competent with di-
rect. As against each other their relative convincing
power is for the jury. The trial court apparently

assumed that defendant's direct denial must be taken as true against all circumstantial evidence introduced.

"To hold that in all cases when a witness swears to a certain fact the court must instruct the jury to accept that statement as proven, would be to establish a dangerous rule.   Witnesses sometimes are mistaken and sometimes unfortunately are wilfully mendacious. The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make."   *Yonkus* v. *McKay,* 186 Mich. 203, 210 (Ann. Cas: 1917E, 458) ; citing *Woodin* v. *Durfee,* 46 Mich. 424.

The undisputed testimony in this case shows that the Dodge auto which struck and killed deceased was driven at an unlawful and reckless rate of speed in a grossly negligent manner directly across the safety zone on which prospective passengers were awaiting the coming of a street car.   It bore a Michigan license for the year 1918 numbered 29,238.   The Dodge car entitled to and actually bearing that number on the night in question was in the custody of and being driven by defendant.   It was taken out of the garage where he lived by him early in the evening and by him safely returned late that night to the place from which he took it.   He drove it around town and down town and parked it for a time at Cadillac square, as he said was his custom when he came down town. He first drove it shortly after supper to his brother's home at the corner of Elba and Mt. Elliott streets and from there, as he finally orientated himself after some evasion, he drove to visit a young lady living in a flat at the southwest corner of Canfield and Sheridan streets where he timed his arrival as between half-past 7 and 8 o'clock.   Why he went there or how long he remained he does not make clear but he gives his next move from there to Cadillac square, where he parked his car at about 11 o'clock, he thought.   At

each of these places on resuming his journey he found his car where he left it, undisturbed so far as he knew. There is absolutely no evidence that any one but himself drove or touched his car that evening from the time he left home shortly after supper until he returned with it about midnight, beyond his statement that he did not drive it down Gratiot avenue where the accident occurred that evening. The young woman he claimed to be visiting about the time of the accident was not produced as a witness. The most direct route either from his own home, the home of his brother, or the flats where he visited the young lady, to Cadillac square, where he testified he last parked his car, was by Gratiot avenue past the spot where deceased was killed. He had driven an automobile around Detroit for four years and was familiar with its thoroughfares. His reasons for taking a different route and account of his whereabouts during that evening were in certain respects evasive and at times conflicting. There was ample circumstantial evidence from which the jury in balancing probabilities might fairly conclude that he was the driver of the car which caused the accident. His testimony, backed by an impelling motive, was not so consistent, clear and convincing that the jury was bound to accept it in its entirety as conclusive proof. It was for them and not the court to pass upon his credibility.

The judgment is reversed, with costs to plaintiff and a new trial granted.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.