MONAGHAN v. PAVSNER.

AUTOMOBILES—CITY BUS—COLLISION WITH TRUCK—EQUALLY DIVIDED COURT.

Verdict and judgment for plaintiff passenger in city bus, who was injured when the bus collided with a truck owned by appellant, but driven by another person, is affirmed by an equally divided court (CLS 1954, § 257.401).

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error § 1160.

Appeal from Wayne; Maher (Thomas F.), J. Submitted June 5, 1956. (Docket No. 5, Calendar No. 46,727.) Decided December 28, 1956.

Case by George J. Monaghan against Hyman D. Pavsner and others for damages for injuries sustained in collision between truck and motorbus in which plaintiff was a passenger. Action dismissed as to some defendants. Verdict and judgment only against defendant Pavsner. Defendant appeals. Affirmed by an equally divided court.

*Cronin & Cronin,* for plaintiff.

*Carl F. Davidson* (*Roy P. Nelson,* of counsel), for defendant.

Sharpe, J. (*for reversal*). Plaintiff, George J. Monaghan, was injured on October 24, 1950, while a passenger on a bus owned and operated by the city of Detroit (D.S.R.) which collided with a truck owned by defendant, Hyman D. Pavsner. Plaintiff instituted an action at law against the city of Detroit, Hipolite Gorski, the driver of the city bus, Hyman D. Pavsner, Ben Pavsner, Pavsner & Son Builders, and Jack Crumpton. No service was obtained on Jack Crumpton, and the action was dismissed against him when issue was joined as to the remaining defendants. It also appears that Hyman D. Pavsner and his father, Ben Pavsner, were copartners in the construction of buildings; that the truck in question was used by the copartnership in the business of the copartnership; that defendant also used the truck, and when the truck was not in use it was parked in the yard adjacent to his home; that defendant noticed that the truck was missing at 4

p.m., on the day of the accident, but did not know of the accident until 7 a.m., the following morning.

The trial of the case resulted in a voluntary dismissal by plaintiff as to Ben Pavsner and Pavsner & Son Builders and a jury verdict of no cause of action against the city of Detroit and a verdict of $15,000 in favor of plaintiff against Hyman D. Pavsner, individually. In the trial of the case, plaintiff called defendant Hyman D. Pavsner under the statute, CL 1948, § 617.66 (Stat Ann § 27.915), for cross-examination and Hyman D. Pavsner gave the following testimony:

"Jack Crumpton, the man who was driving the truck at the time of the accident, had been employed by me as an independent contractor in the building business; he was a bricklayer by trade and his contracts covered the brick work of our houses. I bought this truck some time in the middle of 1950, July, some time in there; the truck was bought for the purpose of being used in the building business. * * *

"I first discovered the truck was gone at 7 a.m., the next morning when Mrs. Crumpton called me to tell me that Jack Crumpton had been in an accident. When I came home from school, I saw the truck in the back yard of the house between the hours of 4 and 5. I don't recall exactly when it was, I did not notice it there after 4 o'clock. The following day at 7 o'clock in the morning, I looked out the window to ascertain whether the truck was there or not, and it was not there and from 5 o'clock the previous night to 7 o'clock in the morning I was in the house and I was either listening to the radio, television, or reading. * * *

"Q. Is it true the last time that Mr. Crumpton did any work for you or the partnership was September 27, 1950?

"A. That is correct. * * *

"I told Mr. Cronin that after the 27th of September, 1950, Mr. Crumpton was no longer employed

by us. My father hired another bricklayer following the discharge of Mr. Crumpton. We had no scaffolding of our own, we didn't have any scaffolding at any time. Mr. Crumpton had never taken my truck to move the scaffolding without my consent and I did not give my consent in October to have him move it.

"*Q.* I am asking you now if you did give your consent?

"*A.* I did not give Mr. Crumpton consent to use the truck. * * *

"*Q.* You say Mr. Crumpton took this truck without your knowledge and consent or your father's?

"*A.* That is correct."

Ben Pavsner, one of the defendants, was also called for cross-examination under the statute. He testified as follows:

"These houses that Jack Crumpton did the bricklaying for are on the west side of the city, 5 or 6 miles from Linwood and Elmhurst. I never asked Crumpton or any of his men to do repair work for me of any kind, all the work that Crumpton did for me as a bricklayer was in good workmanlike manner; there was no necessity for him to come back and make any repairs or touchups at all. On September 27, 1950, I paid him $500, that paid him up entirely as far as work was concerned, he did nothing for me or the partnership after September 27, 1950. I didn't ask him to come back and look at the job after September 27, 1950. Nothing required repairing or fixing up after that. I did not see Jack Crumpton after September 27, 1950. The last relationship of any kind between the partnership of Pavsner & Son and Jack Crumpton was on September 27, 1950.

"*Q.* As far as this truck was concerned, you had no control over it, did you?

"*A.* No, I didn't have no control.

"*Q.* If he wanted permission to use it, he had to get it from your son Hy?

"*A.* My son, Hy. I never at any time told Crumpton that he could use the car and that it would be O.K. with me. He never asked me. Jack Crumpton was not a relation of me or my son."

It also appears that Hyman D. Pavsner testified that there was no chattel mortgage on the truck and plaintiff offered testimony to contradict the testimony relative to the mortgage. At the close of plaintiff's case, and again at the close of the case of defendants, Hyman D. Pavsner, Ben Pavsner, and Pavsner & Son, the defendants, made a motion for a directed verdict on the ground that there was no evidence to establish knowledge or consent by any defendant giving permission to Jack Crumpton to operate the vehicle at the time of the accident. The trial court denied the motion as to Hyman D. Pavsner and submitted the cause to the jury with the result heretofore mentioned. Defendant appeals and urges that the trial court was in error in failing to grant his motion for a directed verdict.

CLS 1954, § 257.401 (Stat Ann 1952 Rev § 9.2101) provides, in part, as follows:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law requires. *The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge.*" (Emphasis supplied.)

The burden of proving consent, either express or implied, rests upon plaintiff, and in attempting to do so plaintiff invoked the provisions of CL 1948, § 617.66 (Stat Ann § 27.915). This statute gives plaintiff the right to call the opposite party for cross-examination:

"Hereafter in any suit or proceeding in any court of law or equity in this State, either party, if he shall call as a witness in his behalf, the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

In *Hall* v. *Horak,* 329 Mich 16, 21, we had occasion to construe the above statute. We there said:

"As before noted, defendant was called by plaintiff for cross-examination under the statute. Insofar as his testimony was not contradicted by other proofs in the case plaintiff was bound thereby. It may not be said that such testimony was inherently improbable or incredible. See *Schaupeter* v. *Schaupeter,* 317 Mich 84; *Dahlerup* v. *Grand Trunk Western R. Co.,* 319 Mich 96. In *In re Estate of Taylor,* 271 Mich 404, 406, 407, it was said:

" 'When plaintiffs called defendant for cross-examination under the statute, *defendant thereby became plaintiffs' witness. Plaintiffs are bound by his testimony except so far as it was disputed.* In the consideration of defendant Taylor's testimony, plaintiffs may not select isolated portions thereof and claim a force and effect for such portions of his testimony which the whole of his testimony does not warrant. The testimony of the opposite party as a witness must be treated as a whole; and, when so treated, defendant's testimony negatives plaintiffs' claim. *Jones* v. *Pere Marquette R. Co.,* 168 Mich 1; *Cook* v. *Michigan Central R. Co.,* 189 Mich 456; *Steele* v. *City of Ionia,* 209 Mich 595; *O'Dell* v. *Day,* 214

Mich 566; *Waller* v. *Sloan,* 225 Mich 600; *Swank* v. *Croff,* 245 Mich 657; *Fleegar* v. *Consumers Power Co.,* 262 Mich 537; *Snyder* v. *Johnson,* 264 Mich 286. (Emphasis supplied.)

" 'As said in *Fleegar* v. *Consumers Power Co., supra* (p 541):

" ' "His testimony, being in the case, must be weighed and considered the same as that of any other witness (*City of Kalamazoo* v. *Standard Paper Co.,* 182 Mich 476); and though plaintiff was at liberty to contradict his testimony (*Cook* v. *Michigan Central R. Co.,* 189 Mich 456), she was bound thereby (*Aphoresmenos* v. *McIntosh,* 189 Mich 680), except so far as such testimony was contradicted (*Swank* v. *Croff,* 245 Mich 657)." ' "

Plaintiff relies upon *Krisher* v. *Duff,* 331 Mich 699, 706, where we said:

"The presumption of consent or permission by the owner of an automobile arising through its use by the party causing the injury exists in practically every State in the Union including Michigan and is a rebuttable presumption as well. Generally speaking, the evidence to make this presumption disappear should be positive, unequivocal, strong and credible. The presumption is given more weight because of the dangerous instrumentality involved and the danger of permitting incompetent driving on the highway; and because the proof or disproof of consent or permission usually rests almost entirely with the defendants. The defendant owner frequently may be the only witness and not disinterested."

In the above case, at page 707, we also quoted with approval from *Schultz* v. *Swift & Co.,* 210 Minn 533, 537 (299 NW 7), as follows:

" 'The prima facie case is not overcome by the uncontradicted testimony of interested witnesses, "if the evidence is for any cause inconclusive in its nature—as, for example, where different conclusions

may be reasonably drawn from it, or where its credibility is doubtful." (Citing cases.)' "

Plaintiff relies upon the following facts in support of his claim that Jack Crumpton, the driver of defendant's truck, drove it on the night in question with the consent of defendant: in that prior to September 27, 1950, Jack Crumpton drove the truck, and that defendant's testimony relative to the mortgage on the truck was a matter of dispute. We note that defendant's testimony relative to Jack Crumpton's driving the truck is positive in that no consent to drive the truck was given after September 27, 1950. It should also be noted that the testimony relative to the mortgage on the truck has no relationship to the issue here involved, namely, the consent to drive the truck. There being no testimony in the case contradicting or impeaching the testimony of defendant on the issue of consent, such testimony must be accepted and defeats plaintiff's claim of right of action against defendant Hyman D. Pavsner.

The judgment should be reversed and a judgment should be entered in the circuit court of Wayne county against plaintiff. Defendant should recover costs.

DETHMERS, C. J., and BOYLES, and CARR, JJ., concurred with SHARPE, J.

BLACK, J. (for affirmance). The question before us is controlled by worthy doctrines recorded in *Hatter* v. *Dodge Brothers,* 202 Mich 97. On that occasion, it being agreed that the plaintiff should prevail if at all on strength of inference and presumption arising from similarly established facts— ownership by the defendant of a motor vehicle and negligent operation thereof on a public way by one not before the court as a defendant or witness—the

court initially considered section 29 of the so-called "owner-liability act" of 1915* and then went on to say (p 102 of report):

"This act takes special cognizance of recognized rules of evidence upon implications and presumptions arising from proven facts as proper and legitimate in establishing the responsibility of the owner of an automobile for injuries resulting from its negligent operation by another. It recognizes the difficulty to the injured party of securing direct proof in an automobile accident that the use by another is authorized by the owner and makes plain that fact may be presumptively or impliedly shown by proven facts from which it can be reasonably inferred. The permissible presumptions arising from proven facts are either conclusive, or disputable and open to rebuttal. If the automobile was being driven by specified relatives or immediate members of the owner's family the presumption that its use was authorized by him is made conclusive by the statute. It is an intendment of the law which he may not deny or contravene by other evidence, direct or indirect.

"In the absence of such statutory qualification the possession, use and control of an automobile in a public place fairly gives rise to the inference that the person so in control is the owner of such property or in lawful possession of it with the express or implied consent of the owner. By statute it is made a felony to take possession of and use a motor vehicle without authority (CL 1915, § 15431; PA 1917, No 220),† and the presumption of innocence, in the absence of proof to the contrary, attends the driver. Unexplained and undisputed, the reasonable inference of consent by the owner and authority of

---

* The present-day "owner-liability" provisions appear in CLS 1954, § 257.401 (Stat Ann 1952 Rev § 9.2101).

† This statute is reflected now, without substantial change, in CL 1948, § 750.413 (Stat Ann 1954 Rev § 28.645). A separate statute, making it a misdemeanor to take or use without authority any motor vehicle without intent to steal the same, is shown in CL 1948, § 750.414. (Stat Ann 1954 Rev § 28.646).

the driver is such as common sense and common experience usually draws and applies to the possession of those driving automobiles along our highways. A prima facie case was made out by plaintiff's evidence, putting defendant to its proofs."

Was the inference of defendant Pavsner's consent, arising from Crumpton's possession and control of the Pavsner truck when the latter struck the public bus, overcome as a matter of law by defendant Pavsner's testimony? Was the presumption of Crumpton's innocence of theft or unlawful use of a motor vehicle overcome as a matter of law by defendant Pavsner's sworn statement—quoted in Mr. Justice SHARPE's opinion—that Crumpton was driving the truck without his, Pavsner's, knowledge or consent? These questions call, of course, for analysis of the record in light favorable to the plaintiff—not the defendant.

Mr. Justice SHARPE has quoted portions of the testimony as given by defendant Pavsner and the latter's father, Ben Pavsner. Here is more, that the picture be made comprehensively clear, of defendant Pavsner's testimony:

"*Q.* I think you testified or stated last year that you and Jack Crumpton were the only ones who drove the truck.

"*A.* Jack Crumpton and I were the only ones who used that truck.

"*Q.* And your father never drove the truck?

"*A.* My dad never drove it. The truck, when not being used, I kept next to my house on an empty lot in the back, from the back end of my house, oh, about 80 to 90 feet. * * * I never at any time made any complaints to the police department or anybody else against Jack Crumpton for taking the truck. It never occurred to me to do so; there had never been any trouble between me and Crumpton, about 2 weeks after this accident, I sold the truck to Crump-

ton on time, $75 down. It was repaired at that time and he paid for the repairs. I first saw the truck after the accident in a repair garage on Cortland avenue and Dexter. The truck company took it there at my request. I ordered the repairs made on it. I first saw the truck about 3 or 4 days after the accident; it lay there 3 or 4 days before I even looked at it; not a thing was in it, everything had been taken out, I don't know what was in it. I used it for myself in the partnership business. I bought it to help in the partnership business. I also used it for myself. * * * I do not know where Mr. Crumpton is at the present time. I visited him at the hospital. * * *

"I never reported the occasion such as I have described to the police department. * * *

"*Q.* Did you ever report it to anyone?

"*A.* Did I report it?

"*Q.* Did you ever report the loss?

"*A.* To my attorney.

"*Q.* To your attorney, Mr. Davidson?

"*A.* Yes, sir. * * *

"*Q.* Yet when you say this truck was stolen from you, whatever the value was, you just did nothing about it?

"*A.* No, it never occurred to me that I should do anything about it. I was never even notified by the proper authorities my truck was even gone.

"*Q.* What proper authorities?

"*A.* The police department.

"*Q.* Why should they notify you that the truck was gone when you never told them it was gone? How would they know it was gone if you didn't report it stolen?

"*A.* I don't know, sir. * * *

"I and Jack Crumpton were the only ones who drove the truck and in driving the truck Jack Crumpton usually used it for carrying scaffolding and small tools, I mean small building tools. I drove the truck during the month of October, 1950, but very

seldom, I drove it up to the job several times. When I didn't drive it, Jack Crumpton drove it."

*First:* Now, having considered the foregoing, let us analyze the whole record for answer to the doubly-stated question above. In the first place we search in vain for proof—distinguished from claim—that original consent on the part of defendant, to Crumpton's continued use of the truck, was withdrawn at any time. Next, when one's truck or car disappears from the backyard during the nighttime—no other being expressly or impliedly authorized to take it of course—it is to be expected that the roused owner will promptly notify the police authorities and not become a musing philosopher. By the same token, the owner whose pilfered truck is involved in an accident of moment does not as a rule proceed to dicker with the pilferer toward sale of the truck to him. The human instinct—nay duty of a citizen—is to make formal complaint. Finally, it is somewhat unusual to find the owner visiting, at the hospital after such accident, the culprit driver. These considerations all bear upon Mr. Pavsner's credibility when he claims an unlawful act on the part of Crumpton, and they call into play the rules governing weight and sufficiency of evidence found in *Cebulak* v. *Lewis,* 320 Mich 710 (5 ALR2d 186). There is no middle ground here. Crumpton's possession and use was lawful, or unlawful.

The above is by no means all the attentive reader of this record will find in the way of justification of the jury's refusal to believe the defendant. In his declaration filed December 7, 1951, plaintiff alleged that the truck was being driven by Crumpton, with defendant's knowledge and consent, at the time Crumpton's negligence took effect upon him. By answer filed December 27, 1951, defendant said that he neither admitted nor denied such allegation "and

for lack of information leaves plaintiff to his proof."*

It is true that the mentioned pleadings were amended 17 months after original filing, but even in the amended answer I find no framed or hinted issue that the truck was being driven by Crumpton without defendant's knowledge or consent. The amended answer does deny allegation "that said truck was being operated at said time and place by one Jack Crumpton as agent and servant of the defendant." Such denial does not, however, meet the separate issue of statutory knowledge or consent. The sum result is that defendant's mentioned answer constitutes, there being no exculpatory explanation, an admission by the defendant that he was unable to plead, because he knew naught thereof, the substance of matters requisite to support that which he later testified to in the form of a conclusion—that Crumpton's use of the truck was without his knowledge or consent.

Of pleadings as admissions, Jones says (2 Jones, Commentaries on Evidence [The Blue Book of Evidence], § 274, p 514):

"Where a party to an action makes solemn admissions against his interest in a pleading, they should be treated as admitted facts, and he will not be heard to question the correctness thereof at any stage of the case in the trial court, or on appeal, when properly preserved in a transcript or case made so long as they remain a part of the record. If the statements or admissions were made by himself or by his counsel under an honest mistake or misapprehension of what the facts really were, and he desires to be relieved from the effect thereof, he

---

\* Who, indeed, would know better than defendant whether plaintiff's allegation of knowledge and consent was true or false? Will we hear him, in circumstances like this, say he knows in 1955 what he didn't know in 1951, and then accord his positive statement absolute verity as a matter of law? Not with this writer's supporting vote.

should apply to the trial court for leave to withdraw such admissions or pleadings, and if required to do so, make a showing of good faith in support of his application, which should be granted or denied in the furtherance of justice."

*Cady* v. *Doxtator,* 193 Mich 170 (14 ALR 10) (a case similar to the one at bar in many respects), with cases from Pennsylvania, Colorado, West Virginia and Missouri, will be found reported and annotated in 14 ALR, commencing at page 1, under title (p 22) "Admissibility as evidence of pleadings as containing admissions against interest."* The annotator summarizes the weight of authority, considering withdrawn or superseded pleadings, as follows (pp 65–72):

"With but few exceptions pleadings withdrawn or superseded by amended pleadings are admitted, other conditions being proper, against the pleader in the proceeding in which filed, or, in the case of revived actions, against the substituted parties to the action, as evidence of admissions against interest therein contained. So, admissions in an answer a demurrer to which has been sustained so that it is no longer a pleading in the case have been held admissible. This rule is consistent with the general rules of evidence governing admissions against interest, and there is no apparent reason against the propriety of its applications to admissions contained in pleadings. An admission once made continues to be an admission, irrespective of its use or nonuse for the purpose for which intended. The courts holding the minority view apparently have confused rules of pleading with rules of evidence. It is well enough to hold that a pleader is not bound conclusively as a matter of pleading by admissions against interest contained in a pleading abandoned by him. But when such an admission is viewed as a matter

---

* For subsequent annotation addressed to same subject, see 90 ALR 1393.

of evidence, inconclusive and subject to explanation, rules of evidence, and not those of pleading, are to be invoked."

*Second:* Turning now to defendant's impeachment as sketched in Mr. Justice SHARPE's opinion: Mr. Pavsner testified positively that he bought the truck in July of 1950; that he paid cash for it, and that he had no mortgage "put on it." It was shown by the testimony of and an instrument produced by Contract Purchase Corporation's collection manager that he, defendant Pavsner, had actually executed a chattel mortgage—the amount being $1,-107.60—in favor of Contract Purchase Corporation under date of July 12, 1950, covering the same truck Crumpton was driving 4 months later. This impeaching testimony was neither explained nor answered by defendant. Alone, and unaided by previously considered matters, it was sufficient to cast doubt upon his credibility as a witness. As in *Ricketts* v. *Froehlich,* 218 Mich 459, 463, "His testimony, backed by an impelling motive, was not so consistent, clear and convincing that the jury was bound to accept it in its entirety as conclusive proof. It was for them and not the court to pass upon his credibility."

*Third: Hatter's* quoted doctrines bring to focus the presumption attending Crumpton from the start —that of innocence. After having observed, "Perhaps there is no presumption more highly favored in the law than that of innocence," Jones goes on to say (1 Jones, Commentaries on Evidence [The Blue Book of Evidence], § 12, pp 89, 90):

"The favor with which this presumption is regarded in the law is illustrated in this, that when misconduct or crime is alleged, whether in a criminal or in a civil suit, whether in a direct proceeding to punish the offender or in some collateral manner, the accused is presumed to be innocent until proved

guilty. This is also illustrated by the fact that other presumptions are so often said to yield to that of innocence, and by the fact that although ordinarily the burden of proof is on the one asserting the affirmative of the issue, yet if proof of a negative is necessary to establish guilt, such proof must be made. This presumption has its most frequent application in the criminal law; indeed, it has sometimes been said to have no place in civil cases except so far as it regulates the burden of proof. But it is held by the general weight of authority, as will be seen by the illustrations given below, that the presumption rests on a broader basis. As stated by Mr. Taylor: 'The right which every man has to his character, the value of that character to himself and his family and the evil consequences which would result to society if charges of guilt were lightly entertained, or readily established in courts of justice—these are the real considerations which have led to the adoption of the rule that all imputations of crime must be strictly proved. The rule, then, is recognized alike by all tribunals, whether civil or criminal, and is equally effective in all proceedings, whether the question of guilt be directly or incidentally raised.' "

But it is said in some legal quarters that the member-of-family presumption considered in *Cebulak* is of statutory origin, whereas the one applied in *Hatter* (of innocence) is a product of the common law. The point is never pursued to actual declaration that a statutory presumption is accorded greater weight than one made at the bench, yet its innuendo continues the steerageway of plausibility in the absence of express ruling on our part. We should, then, write into the scroll plain declaration that the mentioned presumption of innocence, of an outside-the-family driver, equals in weight and dignity the statutory presumption of knowledge or consent, and that *Hatter's* inference of rightful use and

control of a motor vehicle on a public way, arising from such presumption of innocence, casts on the defendant in a case of this nature "the burden of producing clear, positive and credible proof" (quotation from *Cebulak* v. *Lewis, supra,* p 724 of report) that express or implied knowledge or consent was absent.

*Fourth:* It is said—and I refer again to Mr. Justice SHARPE's opinion—that plaintiff, having called defendant to the stand for statutory cross-examination, thereby made defendant his witness and became "bound" by the latter's favorable-to-himself and positive-in-1955 conclusion that Crumpton had taken possession of and was driving the truck without required knowledge or consent. Does this mean that the act of calling an opposite party for statutory cross-examination makes the latter's testimony of higher evidentiary worth than if such testimony had been given later, during presentation of such opposite party's side of the case? I say no. The question is important since this plaintiff, had he chosen to do so, could have rested his case on *Hatter's* rule without having called the defendant to the stand.

It is provable that this statute (CL 1948, § 617.66 [Stat Ann § 27.915] ) was never intended for the purpose and result declared in Mr. Justice SHARPE's opinion. I put it to my elder Brothers—as did Justices BUSHNELL, BUTZEL and EDWARD M. SHARPE in the presently mentioned *Taylor Case*—that their relevant decisions have become subject to serious and Topsy-grown misconception. In *City of Detroit* v. *Porath,* 271 Mich 42, 75, 76, this Court—unanimous at the time—had this to say of the mentioned statute:

"This statute has been frequently construed. Its purpose was to do away with a technical rule of evidence and facilitate getting at the facts in a

particular case so it might be tried upon the merits, and to give to each of the parties the same benefit of the other's testimony as though they had become witnesses in their own behalf. Testimony elicited upon cross-examination of the opposite party, or his agents, stands in no different position than it would if the adversary of the party calling the witness had called him himself. * * * The testimony of an antagonist or of his agent, called for cross-examination under this statute stands in no different position in the case than it would have stood had it been called out on cross-examination after he had taken the stand to testify in his own behalf. *Aphores-menos* v. *McIntosh,* 189 Mich 680."

Thirty-nine days later the same Court, making no mention of *Porath,* divided 4–3 with respect to rightful construction and application thereof (*In re Estate of Taylor,* 271 Mich 404, 408). In the minority opinion, signed as noted above by Justices BUSH-NELL, BUTZEL and EDWARD M. SHARPE, earlier cases were compared with what were then the recent cases of *Swank* v. *Croff,* 245 Mich 657; and *Fleegar* v. *Consumers Power Co.,* 262 Mich 537. *Swank* and *Fleegar* employ the mentioned expression that testimony called out under the statute binds the caller. Of *Swank* and *Fleegar* the minority said (p 412 of report):

"Critically examined, these later interpretations of the statute are also correct. They contain, however, the statement which is calculated to cause confusion, *i. e.,* that the witness called for examination under the statute is a witness for the party who calls him. This confusion has arisen in the minds of practitioners because of the fundamental rule of evidence that each party impliedly vouches for the credibility of his witnesses, *i. e.,* is bound by their answers. * * *

"But neither party, by calling a person for examination under the statute, makes that person his

witness unless it be in the unimportant sense of having his testimony classified in the record with the plaintiff's or the defendant's witnesses, as the case may be.

"The purpose of a trial is to bring out the whole truth in an orderly manner. Frequently, to do this, it becomes necessary to call an adverse party as a witness. The statute did not intend to bind the party calling such witness so as to preclude impeachment, nor to prevent the refutation of false or erroneous testimony. Any other construction of the statute might lead to the suppression of the truth, and might result in the giving of testimony by the adverse party in direct contradiction of former statements made by him without the opportunity of impeachment. Frequently the adverse party may be the sole witness of an event, as in the instant case, and his testimony may on its very face appear to be false but still bind the examiner under any other construction of the statute. The statute was enacted for the purpose of eliciting the truth, not for suppressing it, and the greatest freedom should be given in bringing out the facts without any danger of being bound by testimony of an adverse witness who may testify falsely, for, as stated by Mr. Justice MOORE in *Maki v. Mohawk Mining Co.*, 176 Mich 497, 503:

"'It is apparent from what we have quoted from the act that its purpose was to do away with a technical rule of evidence, and to facilitate getting at the facts of a given case, so that it might be tried upon its merits.'"

The quotation from unanimous *Porath*, and the later one from *Taylor's* narrowly-lost dissent, bring to sight a little horse sense of the past, namely, that the testimony of a statutorily cross-examined witness rises to no greater dignity or plane of weight than if given by him during presentation of his own side of the case. For my part, and until we adjust *Horak's* collection (*Hall* v. *Horak*, 329

Mich 16) to the rules quoted from *Porath* and *Taylor,* testimony such as was given by defendant in the present case will be tested on motion for directed verdict as if it had been called out during his defense. So viewed, Mr. Pavsner's testimony, at best, made a jury question whether the inference of rightful possession of the truck by Crumpton, and the presumption that Crumpton was innocent of criminal wrong, had been overcome.

I vote to affirm on ground that the jury was provided with abundant reason for disbelief of Mr. Pavsner's statement—sworn to 4 years after he had pleaded "no knowledge"—that Crumpton was driving the truck without his, Pavsner's, knowledge or consent.

SMITH, EDWARDS, and KELLY, JJ., concurred with BLACK, J.