GALEA v. DETROIT WABEEK BANK & TRUST COMPANY.

1. NUISANCE—AWNING OVERHANGING PUBLIC SIDEWALK—EVIDENCE.
   Plaintiff, injured from fall of awning from defendants' building, while he was passing on public sidewalk, failed to establish an action for injuries due to nuisance, where it appears the awning came down suddenly through the deliberate intervention of some human agency.

2. NEGLIGENCE—AWNINGS—EVIDENCE.
   Evidence did not preponderate against finding of trial court in nonjury case that defendant bank, as owner, and other defendant, as prospective tenant, were not guilty of negligence in any manner with respect to awning on building which fell and injured plaintiff on adjoining public sidewalk.

3. TRIAL—NONJURY CASE—MOTION FOR JUDGMENT—EVIDENCE.
   A plaintiff is entitled to have his proofs viewed in the light most favorable to him when a defendant interposes a motion for judgment in a nonjury case.

BLACK, VOELKER, and KAVANAGH, JJ., dissenting in part.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur, Highways §§ 285, 294.
[2] 38 Am Jur, Negligence § 332.
[3] 3 Am Jur, Appeal and Error § 817.

Appeal from Wayne; McCree, Jr. (Wade H.), J. Submitted April 9, 1959. (Docket No. 31, Calendar No. 47,509.) Decided October 12, 1959.

Case by Paul Galea against Detroit Wabeek Bank & Trust Company, subsequently designated as Detroit Bank & Trust Company, and Younis Abrams, answering as Younis Abraham, for personal injuries sustained from fall of awning overhanging public sidewalk. Dismissed as to defendant Abraham. Judgment for defendant bank. Plaintiff appeals. Affirmed.

*George A. Jones,* for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy (A. Hilliard Williams,* of counsel), for defendant bank.

*Saul L. Krieger (Max Chomsky,* of counsel), for defendant Abraham.

Voelker, J. (*dissenting in part*). On June 27, 1955, the plaintiff Galea was walking down Michigan avenue in Detroit when an awning on an adjoining business building suddenly broke away from its moorings and fell on him, breaking his nose and injuring his head and requiring 10 stitches in the latter and an 8-day stay at the hospital. In due course he filed his declaration against the owner bank (which held title to the premises as testamentary trustee) and also against the prospective tenant of the premises from which the awning fell, basing his case on a theory of nuisance in addition to negligence. Both defendants by answer denied any liability. Defendant owner further answered that the awning dropped or fell because certain persons, unknown to and unauthorized by it, had attempted to

remove the awning.    The case came on for trial
before the court without a jury.

The plaintiff recounted on his main case the simple
circumstances of his accident.    He also produced an
investigating police officer who testified that shortly
after the accident he had talked with 2 workmen with
a ladder who said they had been taking down the
awning when it broke away from the building.    The
officer learned that the 2 men had removed the bolts
and cut the awning when it suddenly collapsed and
fell on Galea.    The officer was either unable to or
at least failed to relate who had employed the work-
men.    The 2 workmen did not testify and there is
no explanation in the record before us for their
absence.

The plaintiff also called a representative of the
owner bank for cross-examination under the statute
(CL 1948, § 617.66 [Stat Ann § 27.915]).    He testi-
fied in substance that on June 23, 1955 (4 days before
the accident) the owner had leased the premises to
the defendant Abraham, a wholesale clothier, on
a monthly basis; that while the formal term was not
to start until July 1, 1955, the keys and possession
were, on June 23, 1955, delivered to Abraham so that
he might make certain unspecified repairs and prep-
arations for the purpose of his occupancy; that the
defendant owner caused an inspection to be made
of the awning the next day (June 24th) and then
found it securely attached to the building and in
good condition except for a hole burned in the fabric;
that after the accident further inspection by it dis-
closed that the awning had been cut and the bolts
and nuts removed from the awning arms and that
the awning was down; and finally that neither the
bank nor its representatives had ever authorized
Abraham or anyone to tamper with or remove the
awning and knew nothing about the incident.

The tenant Abraham was likewise called for cross-examination under the statute, and it is fair to say that in a rather extensive number of well-chosen words he testified that he knew nothing about anything. At the conclusion of the plaintiff's proofs the defendant Abraham moved for a dismissal as to himself, which the court granted, evidently treating the motion as one for a directed verdict. The court then considered the case against the bank on the merits and found no cause for action as to it. The plaintiff has appealed here from the result below as to both defendants, urging that he should have prevailed against both defendants, either on a theory of nuisance or of negligence and also that the Abraham motion should not have been granted.

We will dispose of the nuisance theory first. We cannot see where any actionable nuisance is possibly involved in this case. It seems plain from both the pleadings and proofs that the awning came down suddenly through the deliberate intervention of some human agency. If the job of removal was done carelessly that might well support an action for negligence against the person or persons responsible, but that still doesn't constitute a nuisance. See Mr. Justice CARR's scholarly and searching opinion on this whole nuisance doctrine, defining and illustrating the 2 main types of nuisances, and giving numerous instances where the landlord and tenant may or may not be jointly or severally liable therefor, in the recent case of *Bluemer* v. *Saginaw Central Oil & Gas Service, Inc.,* 356 Mich 399. Under the proofs in this case the trial court correctly concluded that no action for any nuisance existed against either defendant in this case.

We next consider the appeal as to the owner bank. As noted, the trial court was also the trier of the facts. It found against the plaintiff finding among other things that there was insufficient evi-

dence to connect the defendant bank in any manner with the accident. On balance, we cannot say that the proofs preponderate the other way. The result reached below as to the defendant owner is therefore affirmed, with costs to it.

Lastly we consider the propriety of the court's action in granting the noted motion of the defendant Abraham. No formal opinion was filed in this regard, but we gather, by implication at least, that the court may have felt somewhat constrained to this action by certain of our past decisions to the effect that a plaintiff is bound by the testimony of an adverse party whom he chooses to call for cross-examination under the statute, at least where the plaintiff is otherwise unable to impeach or rebut that testimony. While the court below thus had undeniable precedent for its action, we think that the rule thus stated and evidently applied here is both too harsh and too broad. This was to lend to the defendant Abraham's voluble denials and claimed lack of knowledge a dignity and weight it would not have possessed had the same testimony been elicited from him in his own defense.

In our view the present plaintiff, with the aid of the Michigan doctrine of *res ipsa loquitur,* recently discussed in *Mitcham* v. *City of Detroit,* 355 Mich 182, had made out a sufficient prima facie case to defeat the motion of the defendant Abraham, which motion we think the court under the circumstances properly treated as one for the nonjury equivalent of a motion for directed verdict—of which more presently. This is tantamount to our saying that the issue of their possible liability should more properly have been left to the trier of the facts as to both defendants.

A defense motion for a directed verdict is in many respects essentially a demurrer to the evidence. Although by statute (CL 1948, § 618.14 [Stat

Ann § 27.994]) nonjury cases are to be tried "as near as may be" as cases tried with a jury, it is the more usual and accurate practice in nonjury cases to refer to what would normally be called a motion for directed verdict in a jury case as a motion for judgment (or, sometimes alternatively, a motion for entry of judgment) when the case is tried nonjury. See *Hilliker* v. *Jewel Oil & Gas Co.* (on rehearing), 277 Mich 615; *Stolt* v. *Shalogian,* 326 Mich 435; and *Hearst Publishing Co.* v. *Litsky,* 339 Mich 642. But aside from the difference in name, the legal considerations involved in the motion are largely the same.

Once we reach the point (as we have here reached) of finding that the plaintiff has made out a prima facie showing, the case should survive a defense motion for peremptory victory, tagged by whatever label, and the issues should go to the trier of the facts. Making all due allowance for the fact that the following quotation obviously is talking about a motion for a directed verdict in a jury case, we think 6 Callaghan's Michigan Pleading & Practice, § 38.88, p 132, pretty well sums up the true judicial province of the trial court when confronted with such a motion, as follows: "The trial judge cannot, however, supplant the jury. His conclusion is accordingly one of law. He is not permitted to 'weigh' the evidence, but only to determine whether there is any jury issue [citing authority]."

If the defendant Abraham had not been called for cross-examination under the statute but had instead made his denials in his own defense after the plaintiff had rested, in our opinion the case should still have gone to the trier of facts. The result should normally not be any different when the plaintiff, having once made out a prima facie case, in an excess of zeal or caution or uncertainty (in view of some of our past decisions) calls the

defendant for cross-examination under the statute. The issue of whether the defendant is telling the truth still remains one of fact to be decided by the trier of the facts. Otherwise the statute permitting adversary cross-examination ahead of time becomes a trap for the trusting and unwary, a mere device to reward the blandest perjury, not an instrument for more speedily getting at the merits of a controversy. Mr. Justice BLACK has written eloquently to the same general effect in his scholarly opinion tracing the curious case history of this statute in *Monaghan* v. *Pavsner,* 347 Mich 511, beginning at page 527. See, also, our comment thereon in *Mitcham* v. *City of Detroit, supra,* at page 198.

Perhaps in this particular case we strain at a gnat, since, as already noted, the judicial and fact-finding functions were united in one individual, namely, the trial judge, and as a practical matter it may well be said that if the trial judge felt as he did in the exercise of his judicial function on the motion, it is rather unlikely that he will change his mind in the future, or that he would have felt much different in his role as a fact finder had he denied the defendant's motion in his judicial capacity at the trial below and instead let the case go to himself on the merits in his dual role as fact finder—as we think he should have done. But the 2 roles are separate, of course, and however dim the practical prospects may appear that this present plaintiff will ever ultimately gain very much by our action on this appeal, the basic principles involved are the same as though this were a jury case, and in nonjury cases the distinction between the 2 roles must at all times be carefully preserved.

One final word. The motion for a directed verdict has a proper and needed place in our law. All who toil in the vineyards of the law know there are many dubious cases that should never even have

been started, let alone permitted to go to a jury. But granting all that, the motion was never intended as a general substitute for a jury trial nor, indeed, as a happy labor-saving device by which preoccupied trial judges might avoid the dreary task of preparing and delivering instructions to a jury. At the risk of laboring the point, we do not seek to destroy the motion, but simply to restore it to the proper and relatively modest place it once enjoyed in our law. We now turn back to the case at hand.

The plaintiff was upon Abraham's motion entitled to have his proofs viewed in the light most favorable to his case. This included, of course, all necessary or reasonable inferences therefrom. It seems rather improbable that the 2 mysterious workmen were, for example, in broad daylight engaged in the act of removing and stealing an old used awning with a hole it it—and then standing around after it had fallen on the head of a pedestrian to discuss the situation with an investigating policeman. In any event the more probable and reasonable inference from the proofs appears to be that someone with real or apparent authority had previously authorized the 2 workmen to remove the awning. Since the trial court at approximately the same time on the same proofs in effect found as a fact that the landlord had nothing to do with any such authorization, the only remaining candidate discernible on the horizon appears to have been the tenant, the defendant Abraham. More bluntly, we suggest the possibility that someone in this case might have been lying. That is an issue of fact and not one of law. We do not say that Abraham did hire these workmen or that he should be held liable in this case. We say only that upon favorable view of all the testimony, along with the reasonable inferences to be drawn therefrom, the issue of his possible liability for negligence should more properly have gone to the trier of the

facts, as did that of the defendant bank. The order granting Abraham's motion is accordingly set aside and the cause remanded for further proceedings, including a new trial as to Abraham, if that should prove necessary, with costs to the plaintiff.

BLACK and KAVANAGH, JJ., concurred with VOELKER, J.

DETHMERS, C. J.   I concur with Mr. Justice Voelker's holding that no case of nuisance was made against either defendant and that the trial court's finding of no cause for action against defendant bank is not against the clear preponderance of the evidence, and, therefore, must be affirmed.

I do not agree that plaintiff should be granted a new trial against defendant Abraham.

At the conclusion of the proofs the defendant bank calmly awaited the court's decision. The court, as trier of the facts without a jury, found, as stated by Mr. Justice VOELKER, "that there was insufficient evidence to connect the defendant bank in any manner with the accident" and accordingly rendered judgment for it of no cause for action.

At the conclusion of plaintiff's proofs counsel for defendant Abraham, with less display of patience, made a motion to dismiss. The trial judge, after reviewing and commenting upon the pertinent evidence, granted the motion, stating "I think, even regarding the testimony in the most favorable light for the plaintiff, that the defendant Abraham is not involved here at all." From this it is clear that the judge did not, as now gathered, apply any rule that defendant Abraham's testimony was binding on plaintiff and must be given added weight because he was called as plaintiff's witness under the statute. On the contrary, the judge indulged no weighing process with respect to his testimony whatsoever,.

but, instead, regarded the testimony in the case in the light most favorable to plaintiff.

The finding which the trial judge made as to both defendants was the same, namely, that there were no proofs to connect them with the accident. Plaintiff can scarcely complain of the fact that the court arrived at that determination as to defendant Abraham by applying to the testimony in the case the test most advantageous to plaintiff, namely, the "most favorable view" test rather than the "clear preponderance" test. How can it profit him to remand the case for new trial and application of the latter test, less favorable and more difficult for him? It is no answer to "suggest the possibility that someone in this case," presumably defendant Abraham, "might have been lying" and to say that this presented an issue of fact to be tried as such and not as one of law. As already stated, with respect to the truth of testimony and determination of what were the facts, plaintiff had the benefit of the most favorable test available to him.

The constitutionally guaranteed right to trial by jury presents involvements in jury cases when the court undertakes to direct a verdict or enter judgment *non obstante veredicto*. There the problem arises whether the court, in thus deciding a question as though it were a question of law, has erred in so doing because the question actually was one of fact which should have been left to the jury, the court thereby having deprived the losing party of his constitutional right to determination of that question by jury. When, as here, the parties have waived their rights to jury trial by voluntarily submitting their case to the judge without a jury, that problem is absent. When the judge, sitting as trier of the facts, has found as a fact that 1 of 2 defendants was not shown by the proofs to be connected with the accident and we affirm that finding as not against

the clear preponderance of the evidence, no constitutional or other right of plaintiff is infringed by the mere fact that that selfsame judge, in making the identical finding, on those proofs, with respect to the other defendant, inadvertently and in response to counsel's ill-conceived motion, employs the nomenclature and terminology and applies the test, more favorable to plaintiff, applicable to determination of questions of law. In the final analysis, the conclusion cannot be escaped that when the judge, as above noted, made the same finding in respect to and in favor of both defendants, he was, in both instances, making a finding of fact which was in accord with the clear preponderance of the evidence. Plaintiff is not entitled to a second determination of this factual question. There being no proof on the record that connects either defendant with the accident or responsibility therefor, the action of the lower court should be affirmed, with costs to defendants.

CARR, KELLY, SMITH, and EDWARDS, JJ., concurred with DETHMERS, C. J.