BAUMGARTNER *v.* HAM.

1. APPEAL AND ERROR—JUDGMENT NOTWITHSTANDING VERDICT—EVI-
DENCE.

Review of verdicts and judgments on defendant's appeal should
be had by examining the evidence in the light most favorable
to plaintiffs, where defendant seeks a reversal and entry of
judgments for himself notwithstanding the verdicts for plain-
tiffs.

2. WITNESSES—CREDIBILITY—QUESTION FOR JURY.

A defendant who became a witness, being interested in the
result, placed his credibility in issue, and whether or not
he was directly disputed, the jury was not bound to accept
his testimony at face value (CLS 1961, § 600.2158).

3. AUTOMOBILES—PRESUMPTION OF AUTHORITY TO OPERATOR—EVI-
DENCE—FAILURE TO COMPLAIN.

The failure of an owner to make complaint to a law-enforcement
officer that operator of truck, involved in accident which
caused plaintiffs' injuries and damages, was then operating
it unlawfully and without authority of the owner, supports,
rather than rebuts, the presumption that it was being operated
with the owner's consent at the time of the accident (CLS
1961, § 257.401).

Appeals from Berrien; Zick (Karl F.), J. Sub-
mitted November 3, 1964. (Calendar Nos. 42, 43,
Docket Nos. 50,490, 50,491.) Decided January 4,
1965.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30A Am Jur, Judgments § 297 *et seq.*
[2] 53 Am Jur, Trial § 169.
    58 Am Jur, Witnesses § 867.
[3] 8 Am Jur 2d, Automobiles and Highway Traffic § 969.

Case by Jane C. Baumgartner against Robert W. Ham, doing business as Ham Wrecking Company, for personal injuries sustained in collision of motor vehicles. Derivative suit by James A. Baumgartner for medical expense and loss of consortium. Cases consolidated for trial and on appeal. Verdicts and judgments for plaintiffs. Defendant appeals. Affirmed.

*Doran, Manion, Boynton & Kamm* and *Gore & Williams* (*Carroll V. Williams,* of counsel), for plaintiffs.

*Seymour & Seymour* (*Dale A. Seymour,* of counsel), for defendant.

BLACK, J. These consolidated suits for negligence were tried to a jury. Defendant Ham appeals from judgments entered upon verdict for plaintiff Jane C. Baumgartner in the sum of $15,000 and verdict for plaintiff James A. Baumgartner in the sum of $2,500. He requests judgments notwithstanding such verdicts or, in the alternative, order of retrial.

In *Monaghan* v. *Pavsner,* 347 Mich 511, and later in *Houseman* v. *Walt Neal, Inc.,* 368 Mich 631, judgments for correspondingly situated plaintiffs were affirmed as against demands for judgments notwithstanding the respective verdicts. Affirmance in each instance resulted from an equally divided vote. The same question is presented anew. We decide it, definitely this time, by declared adherence to pertinent views expressed in the *Monaghan* and *Houseman* opinions for affirmance.

Overlooked this time is the presently unfulfilled duty of one appealing, on like ground, to present the proofs in that light which is most favorable to the party against whom judgment contrary to verdict is sought. In that restricted vein defendant-

appellant's statement of facts is accepted.  It follows:

"At the trial of the case the evidence offered was that the defendant, Robert W. Ham, operated a wrecking business with offices at 504 East Sample street, South Bend, Indiana.  He operated this business under the name of Ham Wrecking Company. He had about 5 or 6 regular employees who worked the year around Monday through Friday and also employed part-time employees on a day-to-day basis. The defendant did not operate his business on Sundays, except on unusual occasions and then only until traffic started.  One of the part-time employees was Bruce E. Walton, a laborer who had been employed by the defendant off and on for about a year prior to June 5th of 1960.  The defendant also employed Charles Walton, brother of Bruce Walton, primarily as a laborer.  Charles Walton did have occasion to drive the defendant's motor vehicles but the defendant had five regular truck drivers.  Bruce Walton did not have a driver's license and the defendant had definitely told Bruce Walton that he was not to drive any of the defendant's vehicles.  To the defendant's knowledge Bruce Walton had never driven any of the defendant's vehicles.  On or about June 3d or 4th, 1960, defendant loaned some plywood to the University of Notre Dame and on Saturday afternoon, June 4th, defendant had this plywood picked up at the University of Notre Dame and loaded onto one of his trucks, a platform dump truck. The plywood was loaded onto this truck by one of the defendant's regular drivers, Ronald Jones, after which the truck was taken to one of the defendant's job sites in South Bend.  The defendant wanted the plywood taken to his home at 1274 Barron Lake road, Niles, Michigan, and made arrangements with Charles Walton, on Saturday afternoon, to take this plywood to his home.  When these arrangements were made with Charles Walton, his brother, Bruce Walton, was not present.  Charles Walton took the defendant's truck to the defendant's home arriving

there Sunday morning around 11:30 to 12 noon. Charles Walton drove the truck and no one else was with him. The load was dumped and Charles Walton helped the defendant stack it after which the defendant told Charles Walton to take the truck and park it back at the job site in South Bend. Charles Walton left the defendant's home, driving the truck, before 1 p.m. South Bend is approximately 16 miles from the defendant's home. About 9:00 p.m. Sunday evening the defendant had a telephone call from the State police post of Niles, Michigan, to the effect his truck had been involved in an accident. The defendant went to the scene of the accident at which time he learned that Bruce Walton was driving the truck at the time of the accident. Defendant had never given Bruce Walton permission to drive the truck and particularly did not give him permission to drive the truck on Sunday, June 5th. Defendant did not know until after the accident that Bruce Walton was driving his truck. Bruce Walton continued as a part-time employee until some time around July 20, 1962.

"The accident in question occurred on June 5, 1960, at approximately 8:58 p.m., Sunday evening, in Berrien county, Niles township, on highway US–31 south of Niles at the intersection with Wrightman road, a dirt road running east from US–31. Highway US–31 runs north and south and is the main highway between Niles, Michigan, and South Bend, Indiana. Driving defendant's truck at the time of the accident was Bruce Walton."

We add one fact, same having been definitely verified by means of correspondence passing between our clerk and counsel for both parties. It conjoins defendant-appellant's admission that he retained Bruce Walton as an employee for a period of more than two years after, according to his credible or incredible testimony, Bruce Walton drove one of Ham Wrecking Company's trucks on a public highway in violation of statute (See *Hatter*

v. *Dodge Brothers,* 202 Mich 97, and quotation there-from in *Monaghan* at 519). The added fact is that there is no evidence that defendant-appellant at any time made complaint to any law-enforcement officer of that which, according to his testimony, amounted either to a felony or misdemeanor. See CL 1948, §§ 750.413, 750.414 (Stat Ann 1954 Rev §§ 28.645, 28.646). Evidently, Bruce Walton being absent, defendant-appellant was willing to testify to the unlawful taking and using of a motor vehicle by Bruce Walton but was not willing to complain and thus testify in a criminal proceeding with Bruce Walton confronting him.

In *Monaghan* present Justice KELLY and the writer, supported by former Justices TALBOT SMITH and EDWARDS, stood for this doctrine (pp 518, 519):

"The question before us is controlled by worthy doctrines recorded in *Hatter* v. *Dodge Brothers,* 202 Mich 97. On that occasion, it being agreed that the plaintiff should prevail if at all on strength of inference and presumption arising from similarly established facts—ownership by the defendant of a motor vehicle and negligent operation thereof on a public way by one not before the court as a defendant or witness—the court initially considered section 29 of the so-called 'owner-liability act' of 1915* and then went on to say:" (here follows extended quotation of the *Hatter Case*).

To paraphrase the opinions for affirmance of *Monaghan* and *Houseman,* both *supra,* it must be held that there is no middle ground here. Bruce Walton's possession and use of the truck was lawful, or unlawful. The trial judge was not obliged to accept defendant-appellant's testimony as conclusive of the knowledge-consent issue. When defendant-

---

* The present "owner-liability" provisions appear in CLS 1961, § 257.401 (Stat Ann 1960 Rev § 9.2101).—REPORTER.

appellant took the stand he, being interested in the result, placed his credibility in issue (CLS 1961, § 600.2158 [Stat Ann 1962 Rev § 27A.2158]). Whether directly disputed or not, the jury was not bound to accept it at face value (*Cebulak* v. *Lewis,* 320 Mich 710 [5 ALR2d 186]; *Petrosky* v. *Dziurman,* 367 Mich 539).

Here, above and beyond the firm conclusion just declared, defendant-appellant's failure to complain and prosecute tended to support rather than overcome *Hatter's* presumption that Bruce Walton drove Ham Wrecking Company's truck with knowledge or consent of its owner. In his opinion for affirmance of *Houseman* Mr. Justice Souris covered all this with care. The following is taken from his opinion (*Houseman* v. *Walt Neal, Inc.,* 368 Mich at 641, 642):

"In the case at bar, appellant's president testified that on the day following the accident, as soon as he heard of it and determined that appellant's car was involved, he verbally reported to the chief of police and the sheriff's department that Schultz was driving appellant's car without authority. However, he made no formal complaint against Schultz, ever, nor did anyone else in behalf of appellant. As a matter of fact, appellant's salesman with whom Schultz negotiated for the car knew on the very day of the accident that Schultz had taken the car and had been in an accident, yet he made no effort to contact the police authorities. His failure to do so then, upon discovery of the claimed unauthorized taking by Schultz, and the failure of appellant's president to make formal complaint thereafter, tend to support rather than rebut the presumption that Schultz had appellant's consent or knowledge, implied if not express, to drive the car off its lot. As was said in *Monaghan* (p 522): 'There is no middle ground here. * * * [Schultz's] possession and use was lawful, or unlawful.' If unlawful, appellant

had a duty to report it promptly upon discovery to the police authorities and to file a formal complaint against Schultz.

"Failing this duty, and absent any other clear, positive, and credible proofs rebutting the presumption that Schultz's possession of the car was lawful, the presumption remained available to the jury in support of a finding, on this record, that Schultz's possession of the car was with appellant's implied consent or knowledge."

No reversible error has been made to appear upon presentation and consideration of appellant's remaining stated questions. Judgments affirmed. Costs to plaintiffs.

KAVANAGH, C. J., and DETHMERS, KELLY, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.